JOHN BELANOWITZ, PETITIONER-DEFENDANT, v. TRAVELERS INSURANCE COMPANY, A CORPORATION, RESPONDENT-PROSECUTOR.

Submitted October 3, 1939—Decided January 3, 1940.

Before Justices PARKER, BODINE and PERSKIE.

For the respondent-prosecutor, *James J. Skeffington.*

For the petitioner-defendant, *David Roskein* and *Walter X. Trumbull.*

BODINE, J. This writ of *certiorari* brings up for review a judgment in the Court of Common Pleas determining that a judgment entered in the Workmen's Compensation Bureau on January 17th, 1939, in favor of John Belanowitz, a former employe of the bankrupt concern of A. Fishman Hat Company, Inc., should be entered against the prosecutor, the Travelers Insurance Company, at one time a workmen's compensation carrier for the bankrupt.

The prosecutor's standard workmen's compensation policy expired October 1st, 1933. The first proceedings in this matter were heard May 25th, 1934, before Commissioner Charles E. Corbin. It then appeared that the workman had complained in June, or perhaps later, but within the period cov-

ered by the prosecutor's policy, of symptoms of mercurial poisoning, an occupational disease. On November 3d, 1933, he ceased work and it is the contention of the prosecutor that under the decision of the Court of Errors and Appeals in *Textileather Corp.* v. *Great American Indemnity Co.,* 108 *N. J. L.* 121, the liability occurred upon that date and beyond the time covered by its policy.

Commissioner Corbin found as follows: 1. That the petitioner while in the employment of the respondent contracted the compensable occupational disease of mercury poisoning. 2. That the respondent had both notice and knowledge of the contraction of the compensable occupational disease within the time required in the workmen's compensation provisions of chapter 95, laws of 1911 and supplements thereof and amendments thereto. 3. That the petitioner's average weekly earnings for the last six months were $23.10 a week, and he being a piece worker, his compensation rate therefore would be $15.40 a week. 4. That the disability, as the result of his contraction of the occupational disease of mercury poisoning commenced on or about the month of June, 1933, but even though he was disabled from that time until November 3d, 1933, when he finished, and beyond that up until November 21st, 1933, that inasmuch as he was employed during this period of time and paid his wages (piece work earnings) he is not entitled to any temporary compensation for that period of time. For temporary disability the petitioner will therefore be paid one and four-sevenths weeks at $15.40 a week, amounting to $24.20, the petitioner having been compensably temporarily disabled for less than seven weeks, the waiting period of seven days under the statute is deducted. 5. That the petitioner suffered a permanent disability as the result of his contraction of the occupational disease of mercury poisoning equivalent to twenty-five per cent. of total permanent disability or one hundred and twenty-five weeks at $15.40 a week, amounting to $1,925."

Commissioner Corbin found the workman diseased in June, 1933, but notwithstanding employed till November 3d, 1933. In the 1939 hearing, the basis for the proceeding under review, no testimony, the basis of the judgment, was returned

with the writ if any was taken, nor was the carrier present or represented. The 1939 finding of disability presumably was based upon an *ex parte* affidavit. The finding was as follows: "for four days during the week ending June 12th, 1933; he was disabled for four days during the week ending June 19th, 1933; and during the week ending June 24th, 1933, he was disabled for three days during the usual working week. Subsequent to the week ending June 24th, 1933, at the solicitation of his superior, he returned to work because the plant was quite busy. However, he was unable to put in a full eight hours work and invariably he ceased working after six or seven hours because of his disability due to the mercurial poisoning which he had contracted. Petitioner worked in the manner heretofore outlined, from the week ending June 24th, 1933, until November 3d, 1933, at which time he ceased work completely." It was further found: that the petitioner was employed by the Hat Company and contracted mercurial poisoning by reason of his exposure to a solution containing mercury, and became disabled therefrom during the week of June 12th, 1933, which time was fixed as the commencement of his disability, and that he was now totally and permanently disabled.

The 1934 finding and judgment seems to have been a consent affair, and the compensation fixed was paid by the employer before bankruptcy.

The proceedings, upon which the present judgment in the Court of Common Pleas was predicated, were instituted upon a petition of undisclosed date, setting forth the adjudication for compensation for increased disability in the bureau and seeking the enforcement thereof against the carrier by reason of the principal's default. Copies of the petition and a rule thereon were served upon the carrier. It answered denying liability: (1) because the employe was not incapacitated during the period of its coverage by mercurial poisoning; and (2) the court lacked jurisdiction to enter a judgment save by the issuance of a summons and complaint; (3) the judgment of Commissioner Corbin was *res judicata,* and fixed the liability of the employer at a time subsequent to the expiration of the prosecutor's policy.

The statutes relevant are *R. S.* 34:15-83, 84, 85 and 86 as follows: "Every contract of insurance covering the liability of an employer for compensation to injured employes or their dependents, written by a stock company or a mutual association, shall provide, or be *construed to provide, that it is made for the benefit of the several employes of the insured employer and their dependents, and that such contract may be enforced by any of such employes or their dependents, suing thereon in his or their names as though distinctly made party thereto.* * * * Every such contract shall further provide, or be construed to provide, that any injured employe or his dependents may enforce the provisions thereof to his or their benefit, either by agreement with the employer and the insurance carrier in event that compensation be settled by agreement, or by joining the insurance carrier with the employer in his petition filed for the purpose of enforcing his claim for compensation, or by subsequent application to the Court of Common Pleas, upon the failure of the employer, for any reason, to make adequate and continuous compensation payments. * * * Every such contract shall provide, or be construed to provide that, as between the employe and the insurance carrier, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the insurance carrier; that jurisdiction of the employer shall, for the purpose of this article, be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment of compensation. * * * Every contract shall provide, or be construed to provide, that, upon the death, insolvency or bankruptcy of the insured employer, or upon his assignment for the benefit of creditors, the insurance carrier shall immediately become directly liable for all compensation payments due to any injured employe or his dependents by virtue of prior agreement or award until completion thereof, or that may thereafter become due during the period for which the required premiums have been paid by the employer."

In this proceeding, the action is predicated upon the failure

of the employer to make adequate and continuous compensation payments. The employer had completed its payments under the first award before bankruptcy intervened. Thereafter the right of the employe, if entitled to increased compensation, was under the statute directly against the carrier. Seeking increased compensation, he should have brought the carrier into the proceedings, if there was any liability, and this we do not decide. We think the case of *O'Banner* v. *Pendlebury*, 107 *N. J. L.* 245, controlling on the point of lack of notice to the carrier of the proceedings in the bureau. To subject an insurance carrier to liability upon a new finding by the bureau, made without notice and the opportunity to participate therein, offends the orderly course of judicial proceedings and cannot be reconciled as within the constitutional requirements. *Wuchter* v. *Pizzutti*, 276 *U. S.* 13.

The statute *R. S.* 34:15-12 provides for compensation for accidental injury resulting in temporary disability, permanent total disability and permanent partial disability. *R. S.* 34:15-32 provides as follows: "The compensation payable for death or disability total in character and permanent in quality resulting from an *occupational disease shall be the same* in amount and duration and shall be payable in the same manner and to the same persons as would have been entitled thereto had the death or *disability been caused by an accident arising out of and in the course of the employment.* In determining the duration of temporary and permanent partial disability, either or both, and the duration of payment for the disability due to occupational diseases, the same rules and regulations as are now applicable to accident or injury occurring under this article shall apply."

No provision is made for a recovery for a functional disability. In occupational disease there may be as in the case of any disease: (1) A temporary disability—an inability to work for a period of time; (2) there may also be permanent total or partial disability. The right to compensation for an accidental injury arises when the accident occurs. Similarly, as was said in *Textileather Corp.* v. *Great American, &c., supra,* the right to compensation for an occupational disability accrues when the disability occurs, not when the first

symptoms appear. The time the legislature fixed for the commencement of the award is when disease results in incapacity or death.

At the time of the hearing before Commissioner Corbin, there was no suggestion of temporary disability or partial disability at a time within the period of coverage by the defendant. If there was a temporary or partial permanent disability it was not so found.

The judgment under review will be set aside, but without costs.