NATURAL PRODUCTS REFINING CO., PROSECUTOR, v. COURT OF COMMON PLEAS ET AL., DEFENDANTS; AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, APPELLANT; NEW JERSEY MANUFACTURERS' CASUALTY INSURANCE COMPANY, RESPONDENT.

Argued May 22, 1940—Decided October 10, 1940.

For the appellant, *James J. Carroll*.

For the respondent, *Drewen & Nugent*.

The opinion of the Court was delivered by

DONGES, J. This is an appeal from a judgment of the Supreme Court on *certiorari* in a workman's compensation case. The controversy is not between the workman and his employer as to the employe's right to compensation, which is conceded and has been paid, but between two insurance carriers as to liability for the compensation paid. The employe, William Domscheit, unquestionably is disabled to the extent adjudged by reason of an industrial disease known as chrome poisoning contracted as the result of exposure in the course of his employment.

Domscheit was employed by the Natural Products Refining Co. from August, 1928, until March, 1934. During all the time he was thus employed the workmen's compensation insurance was carried by the respondent on this appeal, New Jersey Manufacturers' Casualty Insurance Company, except

from November 18th, 1933, to December 17th, 1933, during which period the policy of the appellant here, American Mutual Liability Insurance Company, was in effect. During this period, as the result of complaints to his employer that he was not feeling well, Domscheit was examined by a physician of the American Mutual Company, Dr. Finn, and as a result of this examination his work was changed, on December 7th, 1933, from that of cooper, which brought him into close contact with the substance containing chrome, to outside labor in and about the yard of the employer.

The employe filed a petition for compensation with the Workmen's Compensation Bureau on March 17th, 1934. The New Jersey Manufacturers' Company filed an answer on behalf of the employer. The matter came on for hearing in the bureau on February 14th, 1936, at which time the petitioner appeared and was represented by counsel. The New Jersey Manufacturers' Company appeared by its attorney in defense to the claim. The situation with respect to the coverage by two insurance companies being explained to the deputy commissioner and the attorney for the New Jersey Company asserting his contention that the other carrier was liable, the deputy commissioner did not proceed with the hearing but suggested that the matter be continued and that the American Mutual Company be brought in.

The matter came on for hearing again on April 24th, 1936, when the petitioner and both insurance companies were represented. The petitioner testified to symptoms of the disease as far back as 1932 in the form of nose trouble. He further testified that he continued his regular employment down to December 7th, 1933, when as the result of the examination by Dr. Finn, his work was changed. Two physicians testified on his behalf as to the presence of the occupational disease and the extent of total and permanent disability. One of these based his testimony on an examination made December 13th, 1935, and the other on an examination made April 11th, 1935.

The New Jersey Company then presented its case which consisted of the testimony of two fellow employes of Domscheit, which is not important to the point under review here,

and that of a physician who examined the workman on April 19th, 1934, and again on April 31st, 1934. He testified that on those dates he found a perforation of the nasal septum due to chrome poisoning and gave his opinion of the extent of the disability.

When the New Jersey Company rested its case, the American Mutual Company made a motion to dismiss as to it. The New Jersey Company insisted that the American Mutual Company put in its case before making such motion, but that company declined to do so. The deputy commissioner indicated that he would take the motion under advisement and counsel for the New Jersey Company objected to trying the case piece-meal and again insisted that the other carrier put in its evidence. Counsel for the American Mutual Company recalled one of the prior witnesses for further cross-examination (having engaged in cross-examination of witnesses throughout the case) but offered no evidence on its behalf, despite the fact that it had witnesses in court under subpœna among whom was a Dr. Mears, who will be mentioned later. At the end of the hearing, counsel for the American Company said: "I would like to get this straight. The court denied my right to bring in medical evidence? The court: If I decide against you I will let you hear from me." We find no place in the record where the court refused to permit medical evidence on behalf of the appellant, in fact its adversary was constantly insisting that it put in its full case.

The deputy commissioner took the matter under advisement and subsequently, on June 22d, 1936, filed a determination of facts and rule for judgment dismissing the petition as against the American Mutual Company. The judgment was based upon the reasoning that because chrome poisoning is not an instantaneous affliction but is the result of a gradual process over a period of time, the exposure during the few weeks of the coverage by the American Mutual Company could have had little effect and that company could not be held.

An appeal was taken to the Hudson County Court of Common Pleas and that court, on May 23d, 1938, reversed the judgment of the bureau and found that the American Mutual

Company was liable and the New Jersey Company should be discharged. The order of reversal contained the following language: "Further ordered and adjudged that the said cause be remanded forthwith to the Workmen's Compensation Bureau to take testimony to determine the extent of petitioner's disability, and for such other relief as may be just."

Relying upon this general language, "and for such other relief as may be just" the American Mutual Company sought and obtained a further hearing in the bureau on August 12th, 1938. At this hearing one witness was produced, namely, Dr. Mears, who had been in court at the previous hearing but had not been called. He testified that he treated Domscheit in 1931 for a sore throat and examined him on April 26th, 1932, and on September 28th, 1932, at which times he discovered a perforation of the nasal septum. He examined him again in March, 1934, and found the perforation had grown larger.

On October 28th, 1938, the deputy commissioner rendered a judgment in which, relying upon the testimony of Dr. Mears, he fixed the time of disability as either April or September, 1932, and gave judgment again against the New Jersey Company.

Again the New Jersey Company appealed to the Common Pleas, and on December 3d, 1938, that court entered an order reversing the second judgment of the bureau. The order of reversal said in part: "that part of the order made by this court herein under date of May 23d, 1938, which remanded the cause to the Workmen's Compensation Bureau for further testimony was intended to grant leave for the taking of such further testimony as would affect the extent of the compensable disability of petitioner-appellee and not for the taking of further testimony to alter the prior proofs of the discontinuance of work aforementioned, nor for the taking of further testimony to alter the legal effect hereinabove stated of such discontinuance of work, nor for the taking of further testimony relating to the stages and course of the illness of petitioner-appellee at any time or times prior to such discontinuance of work." Once more it was determined in this order that the American Mutual Company was liable.

On *certiorari* the Supreme Court affirmed on the ground that the date when disability begins in a case such as this is the date when incapacity for the particular form of work which caused the disability occurs, namely, on December 7th, 1933. That question we deem it unnecessary to determine in this case for the reason that we hold the view that the judgment must be affirmed on other grounds.

We are of the opinion that the first judgment of the Court of Common Pleas, entered May 23d, 1938, was dispositive of the dispute here involved, namely, liability as between the insurance companies, and is *res judicata*. That was the sole question raised on that appeal. It was determined by the Common Pleas that the American Mutual Company was liable because the evidence indicated compensable disability occurred during that company's coverage. The appellant did not challenge that judgment by seeking *certiorari*. Relying upon the above quoted language in the first order of reversal it obtained a rehearing in the bureau at which it offered evidence to contradict the factual situation found against it on appeal. This was not newly discovered evidence. The medical witness was in court at the first hearing on the subpœna of appellant. The Common Pleas court has now construed its language in the order of reversal as not justifying the course followed, and we are not disposed to disturb that construction. It was the interest of the employe that was sought to be preserved and not the interests of the disputing insurance carriers.

We are of the opinion that the appellant submitted, or should have submitted, its entire case on the question of its liability at the first hearing in the bureau. It had every opportunity to do so, but chose to rest its case and move for dismissal. The case of *Jayson* v. *Pennsylvania Railroad Co.,* 101 *N. J. L.* 159, relied upon, is not in point. There the bureau dismissed a petition for compensation upon the ground that the workman was engaged in interstate commerce without hearing the defense of the employer on the merits. This holding was reversed, and both the Common Pleas and the Supreme Court refused to remand the case to the bureau for a hearing of the defense. This court reversed the Supreme

Court and remanded the case to the bureau for hearing, but the ground of the decision was that "there was no opportunity afforded the railroad company before the compensation bureau to submit testimony upon the merits of the controversy." Such is not the situation here. Counsel for appellant was present at the hearing and participated in the cross-examination. He chose not to offer witnesses, although urged to do so by his adversary. He had in court under subpœna the very witness upon whose testimony he now relies to avoid liability. We think the appellant was bound by the case it made out at that hearing. When, on appeal, the question was decided against it that judgment was final, unless set aside on *cerliorari*. No steps were taken to disturb it. The procedure adopted of seeking a new trial in the bureau on evidence which had theretofore been withheld cannot be approved. The second judgment of the bureau was, therefore, without warrant and was properly set aside.

Nor do we think the appellant has any standing to rely upon the statement of the deputy commissioner at the first hearing, when the motion for dismissal was made, to the effect that "If I decide against you I will let you hear from me," It was an indefinite statement in any event, was made after counsel had declined to call witnesses, and certainly did not relieve the appellant from the duty of putting in its entire case for the purposes of the record in the event of appeal.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, DONGES, HEHER, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 11.

*For reversal*—None.