GEORGE KOVAL, PETITIONER-PROSECUTOR, v. NATURAL PRODUCTS REFINING COMPANY, RESPONDENT-DEFENDANT.

Submitted March 29, 1947—Decided May 6, 1947.

Before CASE, CHIEF JUSTICE, sitting alone pursuant to the statute.

For the petitioner-prosecutor, *Michael Bibko, Jr.*

For the respondent-defendant, *Kalisch & Kalisch* (*Isidor Kalisch*).

CASE, CHIEF JUSTICE. This is an application by the employee for a writ of *certiorari* with a stipulation by the parties that if I determine a writ should go I may proceed to determine the merits as though upon the return of the writ. I have concluded that a writ should go. The *allocatur* has been signed. I proceed to determine the issue as though upon a return of the record.

In April of 1946 the prosecutor filed two petitions for compensation, one for disability to his back because of accidental injuries, the other for disability as to his nose because of occupational disease. An award was made on each petition. The award with respect to the nose was for three per centum of permanent disability because of the nasal perforation due to chrome poisoning, an occupational disease. The only dispute is whether the disability to the nose should have been calculated upon the 1945 schedule of compensation or upon the 1946 schedule which was more favorable to the employee. The Bureau held for the latter, and the Common Pleas, on appeal, for the former.

I find the facts as follows: Prosecutor was employed by Natural Products Refining Company. On December 14th, 1945, which was about two weeks after the employment began, prosecutor suffered a back injury and lost ten days from work because of it. While receiving treatment for that injury he called the doctor's attention to an itch in his nose and was informed that "there was a hole in it" and was given some salve. That was in December of 1945. On January 8th, 1946, prosecutor quit working for respondent because he could "not stand it any more"—a status which I find included the nose condition. The hole in the septum or nose, with the itching and other incidents thereto, was due to chrome poisoning, an occupational disease which, as is conceded, came from the employment. It had its inception in December of 1945, but there is no proof that it instantly attained its full size. The respondent's expert testified that "whatever chrome would do to the nasal septum it would do early and that is where it ends," and from this it is argued by respondent that the damage to prosecutor's nose was completely accomplished in December of 1945. But that is not the testimony, and I am

satisfied it is not the fact. The fair inference is, and I therefore find the fact to be, that the disease was progressive in December of 1945 and until approximately the end of the exposure on January 8th.

We begin our consideration of the law with the predetermined finding that the employee did suffer a permanent disability of three per centum of total for which he is entitled to compensation. *Sutkowski* v. *Mutual Chemical Co.,* 115 *N. J. L.* 53; 178 *Atl. Rep.* 71. That is conceded. The only open question is when the disability occurred and that in this case is a mixed question of law and fact. The time of the first symptoms of the poisoning did not tie the disability to that moment. Disability arises rather when incapacity occurs. *Textileather Corp.* v. *Great American Indemnity,* 108 *N. J. L.* 121; 156 *Atl. Rep.* 840. But incapacity, in the strict fullness of that word, may not occur, perhaps did not occur in this case, and need not occur. *Sutkowski* v. *Mutual Chemical Co., supra.* Even when compensation is sought for disability arising out of accident, it is not a prerequisite that the employee shall be incapacitated from doing the same work or earning the same wages as theretofore. *Burbage* v. *Lee,* 87 *N. J. L.* 36; 93 *Atl. Rep.* 859. Lacking proof as to when the progress of the disease was arrested and the condition became chronic, I consider that the disability, within the meaning of the statute, became established when prosecutor found himself unable longer to endure the employment and, by quitting, ended the exposure. *R. S.* 34:15–34; *N. J. S. A.* 34:15–34, provides that the period for filing a petition for compensation because of occupational disease shall run from the time when the employee ceased to be exposed; comparing, in this respect, with *R. S.* 34:15–51; *N. J. S. A.* 34:15–51, which provides that the period for filing a petition for compensation because of accident shall run from the date when the accident occurred. I conclude that the disability arose on January 8th, 1946.

The result is that prosecutor was entitled to an award under the 1946 schedule. The judgment in the Pleas in this respect will be reversed, and the judgment in the Bureau will be affirmed, with costs to prosecutor.