MICHAEL CALABRIA, PETITIONER-RESPONDENT, v. LIB-
ERTY MUTUAL INSURANCE CO., RESPONDENT-APPEL-
LANT, AND MARTIN DENNIS CO., HARTFORD ACCI-
DENT AND INDEMNITY COMPANY AND EMPLOYERS'
MUTUAL OF WISCONSIN, RESPONDENTS-RESPOND-
ENTS.

Argued January 16, 1950—Decided February 14, 1950.

*Mr. Francis X. Kenneally* argued the cause for petitioner-respondent (*Mr. Joseph F. Dunn,* attorney).

*Mr. John W. Taylor* argued the cause for Liberty Mutual Insurance Company.

*Mr. Joseph Coult* argued the cause for Hartford Accident and Indemnity Company (*Mr. Wilbur A. Stevens,* attorney).

*Mr. Arthur F. Mead* argued the cause for Employers' Mutual of Wisconsin (*Messrs. Cox & Walburg,* attorneys).

The opinion of the court was delivered by

CASE, J. This branch of the litigation arises from a dispute between insurers as to their respective obligations by reason of successive coverages under the Workmen's Compensation Act. The injured workman is a party and is represented, but it is conceded that he has established a condition of chrome poisoning due to his employment by Martin Dennis Co.

Calabria's employment by Martin Dennis Co. began February 18, 1942, and, except for a plant lay-off of four months—July to November, 1946—continued until the hearing of his claim by the Workmen's Compensation Bureau in January, 1948. He suffers from chrome poisoning due to that employment. The exposure to chrome fumes and dust continued throughout his employment. The disability consisted of an aperture in his nasal septum. He was not obliged to quit work at any time but was found to have a permanent partial disability amounting to six per centum of total and to be entitled to compensation for 33 weeks at $25 per week.

During the employment, Martin Dennis Co. was insured successively by three insurance carriers. The Liberty Mutual Insurance Company, against whom the judgment stands, having insured from an unnamed date which we are left to assume was prior to the employment, ended its coverage on November 28, 1946; the Hartford Accident and Indemnity Company carried the risk from November 29, 1946, to Janu-

ary 8, 1947, and Employers' Mutual of Wisconsin from January 8, 1947, forward. On August 22, 1946, the employer was notified by counsel for Calabria and forty fellow employees similarly situated that claim was being made for compensation because of chrome poisoning, an occupational disease, arising out of and in the course of the employment. The formal claim petition was signed by Calabria on December 20, 1946, although it was not filed until later; and on the same day, December 20, 1946, Calabria was examined by a physician employed by the Liberty Mutual and by a physician employed by Calabria in the presence of the Deputy Director and of counsel for Liberty Mutual and for Calabria. Negotiations toward settlement were unsuccessful, and later the formal petition was filed, bringing in the employer and all three insurers, *Brown v. Conover,* 116 *N. J. L.* 184 *(Sup. Ct.* 1936), *R. S.* 34:15–84, and the matter put in process for the hearing which occurred on January 8, 1948.

The Workmen's Compensation Bureau found, as indicated above, a permanent partial disability chargeable against Liberty Mutual; and, on successive appeals, the judgment was affirmed by the Hudson County Court and by the Appellate Division.

Liberty Mutual presents on this appeal that the liability of the employer to pay compensation did not occur during Liberty Mutual's coverage (meaning that the liability did not arise until after such coverage was terminated), that a time certain must be fixed for the employee's disability and the employer's liability and that the courts below failed properly to construe and apply the statute and to make consistent findings of fact in accordance with the weight of the evidence.

 Calabria made no claim for temporary disability. He could not because there had been no absence from work. After the disability arose he continued to work as theretofore and under like conditions of exposure to chrome poisoning. Therefore, since he had continued his employment with the same employer and had not ceased to be subject to exposure to the occupational disease, the notice, *R. S.* 34:15–33, and the claim, *R. S.* 34:15–34, were both within time. *Herod*

v. *Mutual Chemical Company of America,* 115 *N. J. L.* 369
(*Sup. Ct.* 1935) ; *Stockheimer v. The Carwin Co.,* 135 *N. J.
L.* 49 (*Sup. Ct.* 1946). The expression "injurious exposure,"
as used in the silicosis and asbestosis statute, Chapter 88,
*P. L.* 1944, is not found in the sections just cited and may
not be read into them.

Notwithstanding some proof, not controlling, that there
had been a slight increase in the size of the perforation be-
tween the original examination and the hearing, the Bureau
found as a fact that the claimant's disability, the perforation
of the septum, occurred before November 28, 1946, that it
became static while the Liberty Mutual was the carrier and
that there had been little or no change in the disability down
to the date of the hearing in January of 1948. That deter-
mination of fact met with like expressions in the courts on
appeal. The County Court said:

"That this aggravated state (*viz.,* the condition at the time of the
hearing) had been stationary for a period beginning well within the
Liberty Mutual coverage is shown by petitioner's testimony that 'dur-
ing the last two years it has remained about the same.' If there
had developed after the Liberty Mutual's expiration date a further
stage in the progress of petitioner's ailment of a gravity sufficient
to add a new cumulative phase to the grounds for claim, the proofs
do not show it. Stated another way, the claim petition was filed
June 3, 1947 ; the case was heard on January 8 and 29, 1948 ; and
there is nothing in claimant's condition as of either of these dates
which is not shown to have been present on and prior to November
29, 1946."

The Appellate Division said:

"The Bureau and the County Court found that the disability due
to chrome poisoning occurred during January, 1946, in the period
of appellant's coverage. There is ample evidence in the testimony
to support this conclusion, and we shall not disturb it."

The fact-finding thus made by three tribunals is
entrenched in the proofs, and we accept it; and having ac-
cepted it as a factual basis we find no reason for spreading
the carrier liability beyond the Liberty Mutual or for seeking
a *ratio decidendi* that will cause a pro-rating of the liability.

The disability arose and came to its peak during the coverage of that company; notwithstanding the continued exposure into the terms of other insurers the disability remained static with little or no change during that extended period. If hereafter application be made for additional compensation upon the ground of increased disability, there is nothing in the present determination to prevent an inquiry into the causes of such increase, particularly with respect to subsequent exposure as a causative factor, and a fixing of liability accordingly. This judgment is not *res judicata* against Liberty Mutual to the extent of making it responsible for increases in the disability due, not to the natural progress of the existing disability, but to results of subsequent exposure to chrome poisoning.

 Recognition of a perforation of the nasal septum as a permanent disability in that it is a loss of physical function and detracts from the former efficiency of the body or its members in the ordinary pursuits of life, even when unaccompanied by present incapacity for work, was given by the former Supreme Court in *Sutkowski v. Mutual Chemical Company of America,* 115 *N. J. L.* 53 (1935). Disability arises when incapacity occurs, *Textileather Corporation v. Great American Indemnity Company,* 108 *N. J. L.* 121 (*E. & A.* 1931), but incapacity in the strict fullness of that word may not occur and need not occur to create partial permanent disability arising from occupational poisoning, *Koval v. Natural Products Refining Co.,* 25 *N. J. Misc.* 489 (*Sup. Ct.* 1947). The court of last resort has not heretofore spoken directly on the subject of this phase of partial permanent disability arising from occupational disease without a degree of temporary disability. In *Belanowitz v. Travelers Insurance Company,* 125 *N. J. L.* 301 (1940), the former Court of Errors and Appeals, deciding the appeal on other grounds, declined to pass on the question, although the Supreme Court (123 *N. J. L.* 574,—1940) had commented briefly thereon. In the almost contemporaneous case of *Natural Products Refining Co. v. Hudson County Pleas,* the Court of Errors and Appeals, 125 *N. J. L.* 309, 313 (1940), expressly refused

to pass on the Supreme Court view, 123 *N. J. L.* 522 (1940), that disability under an occupational disease begins when incapacity occurs. *Yurow v. Jersey Hat Corporation,* 131 *N. J. L.* 265 (*Sup. Ct.* 1944), affirmed, 132 *N. J. L.* 180 (*E. & A.* 1944), was a case in which actual incapacity had occurred and in which there appears to have been no earlier disability such as that presented in the instant case. It is our opinion that the status of compensable disability from such an occupational disease as chrome poisoning may be attained when, as here, a definite fault akin to a traumatic injury occurs. Moreover, we have the determination, unappealed as to this finding, that the workman has a permanent compensable disability and that the employer is liable thereon. The burden of the litigation has reference to the relative positions of the employer's insurers. We think it is wholly consistent with the statute, the adjudicated cases and justice that when a definite disability from chrome poisoning has been established against the employer and has become static during the coverage of an insurer and remains so until the date of the hearing, the insurer should be held liable without right to ratable participation by subsequent insurers, even though the hearing on the compensation claim occurs fourteen months after the end of the insurer's coverage and the employee has meanwhile continued to work with the same employer and under the same exposure as theretofore, the continued work and exposure not being a causative or contributory factor in the disability for which the award is made. The determination was filed June 18, 1948, but related back to conditions as they were at the hearing on January 8, 1948; and because the coverage by Liberty Mutual ended on November 28, 1946, that company contends that it is, and ought not to be, adjudged responsible for the cumulative effects of exposure from then until the date of the hearing. The fallacy of that argument is that while the finding was made as of January 8, 1948, the condition then was substantially as it had been on and prior to November 28, 1946, without aggravation by intermediate exposures. Under the finding of facts there were no cumulative effects of continued exposure.

 Liberty Mutual, having throughout this protracted litigation contended that it was not liable because the disability arose after its coverage ended, now raises the point, for the first- time as we are told, that *if* it is liable then the case should go back for the fixing of a more specific time of disability because a varying scale of compensation, effective January 1, 1946, would affect the award, depending upon whether the disability occurred before or after that date. The three lower tribunals have all made the award upon the assumption that disability occurred subsequent to January 1, 1946. The insurer should have made more timely request for a supplemental finding had it considered the determination incomplete in a substantial respect. We think that the assumption made below has support in the proofs and that the case ought not now be put, on that account, in such position that a new series of delaying appeals could be initiated.

We conclude that the liability of the Martin Dennis Co. as employer to pay the compensation did occur during the Liberty Mutual's coverage although it was not determined until later, that the time of the petitioner's disability and the employer's liability have been fixed within the definition of the statute, and that the factual findings below are sufficiently clear and are not contrary to the weight of the evidence.

The judgment below will be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.