26 N.J. Super. 9 (1953)
97 A.2d 1
HARRY ESTELLE, PLAINTIFF-RESPONDENT,
v.
BOARD OF EDUCATION OF THE BOROUGH OF RED BANK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1952.
Decided May 8, 1953.
*14 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. John A. Laird argued the cause for the respondent.
Mr. Robert V. Carton argued the cause for the appellant (Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This is an appeal from a judgment for $80,000 damages resulting from a disease of the lungs which the jury found arose out of the plaintiff's work as janitor of one of the schools of the defendant.
The plaintiff began his employment with the defendant in 1925 and became one of four janitors at the River Street School and performed the duties usual in such a position. Every fourth week he would come to the school early each day, about 4:45 A.M., in order to get up steam and have the school warm by 8 o'clock. In 1933 a motor stoker system was installed in the boiler room and thereafter soft coal was used in the furnaces. The system was semi-automatic, the coal being shovelled by hand into a hopper and from there carried to the fire box by a screw conveyor. Adjacent to the boiler room was the coal bin, 30 by 15 feet, and 12 feet high, with two doorways on the long side. The bin was filled each summer and again each winter. As the supply of coal ran *15 low, it became necessary to go inside the bin to get coal. The trampling upon the fine coal on the floor, the shoveling of the coal, and the coal sliding in the bin, all made a dust that was especially bad during the period of activity in the early morning. And occasionally the coal in the bin had to be screened before it could be used in the stoker.
In 1948 plaintiff first noticed a shortness of breath; later he developed a wheeze, a pain in his chest and a cough; but these conditions bothered him little until January or February of 1950. And he did not seek medical attention until April 26, 1950, when he called on Dr. Parker of Red Bank. Since then he has not been able to work. There is no doubt that plaintiff is suffering from a serious lung condition. Although the medical witnesses disagreed as to the exact nature of his ailment and as to its cause, there was sufficient evidence to sustain the jury's finding that it was caused by the dust which plaintiff breathed into his lungs during his work as janitor.
The plaintiff, in his argument that the defendant is answerable in damages, relies in great part on R.S. 34:6-48, reading,
"Every employer shall, without cost to his employees, provide reasonably effective devices, means and methods to prevent the contraction by them of any illness or disease incident to the work or process in which they are engaged.
Employer as used in this article, unless the context otherwise requires, includes partnerships and corporations."
The first question is whether this section of the revision applies to a governmental body such as the defendant board of education. It is taken from sections 1 and 12 of L. 1914, c. 162, "An Act to prevent lead poisoning and other occupational diseases and providing penalties for the violation of its provisions." The rest of that statute is restated in R.S. 34:6-49 to 57. The principal purpose of the enactment was the protection of employees from lead poisoning to which they might be exposed during manufacturing processes. Penalties ranging from $50 to $300 are imposed on employers *16 who violate or fail to comply with the mandates of the article, including section 48.
It has often been said that under common-law rules of interpretation, the Crown was not bound by a statute unless named in it. Maxwell, Interpretation of Statutes (1937), 120; Sutherland, Statutory Construction (1943), § 6301. "Everything for the benefit of the King shall be taken largely, as everything against the King shall be taken strictly." Coke's Case, Godbolt 289; 78 Eng. Rep. 169, 173 (Ct. of Wards, 1624). The rule, though not in its broadest form, has been recognized in New Jersey. "It is a rule not founded on royal prerogative, but on principles of public policy,  that the state should not suffer from the negligence of its officers and servants." Den v. O'Hanlon, 21 N.J.L. 582, at 588 (E. & A. 1845). "Where the government is not expressly, or by necessary implication, included, it ought to be clear, from the nature of the mischiefs to be reached, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put a construction on a statute which would affect its rights." Trustees of Public Schools v. Trenton, 30 N.J. Eq. 667, 683 (E. & A. 1879); and see there the annotation by the reporter. The rule protects not only the State itself but its agencies, as for example, in the case last cited, the trustees for the support of free schools, and the Chancellor in his official capacity.
The act of 1914 was intended primarily for the protection of employees in manufacturing enterprises. A violator of its provisions is subject to fine. It seems to us quite clear that the Legislature did not intend that the statute be applied to the State or to agencies like the defendant board of education when acting in a governmental capacity. The statute does not affect the defendant in the present case, or enlarge its liability. But the learned trial judge held to the contrary, accepting the plaintiff's contention that the statute was applicable, and he submitted the case to the jury on this theory. For this fundamental error, as we view the law, the judgment must be reversed.
*17 The statutory provision that we have been discussing has been characterized as no more than a restatement of common-law requirements. Rosacci v. U.S. Pipe & Foundry Co., 123 N.J.L. 357 (E. & A. 1939). But that was said in an action against a private employer and not a governmental body. In general, a master is obligated to exercise due and reasonable care to the end that his servant shall have a safe place wherein to work and proper tools and equipment. Clayton v. Ainsworth, 122 N.J.L. 160 (E. & A. 1939). The defendant urges that the operation of this rule is restricted (1) by the principle that a governmental body in the exercise of a governmental function is not liable for mere negligence, but only for malfeasance or misfeasance, and (2) by the statute discussed below, R.S. 18:5-30. The plaintiff rejoins that neither the principle nor the statute is applicable to litigation between an employee of the governmental body and his master.
The common-law rule exempting a governmental body in certain circumstances from liability for negligence in the conduct of its political or governmental affairs has been discussed in a multitude of our cases, of which we may cite Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935); Milstrey v. Hackensack, 8 N.J. Super. 221 (App. Div. 1950), affirmed 6 N.J. 400 (1951), and Kress v. Newark, 8 N.J. 562 (1952). In most of the reported cases, the injured party was not an employee of the defendant, but Wild v. Paterson, 47 N.J.L. 406 (Sup. Ct. 1885), was an action by a member of the fire department who was injured through a lack of care to keep the apparatus in safe condition. While recognizing that the relation between a fireman and the municipality was not the ordinary relation of master and servant, the court said that the duty of maintaining a fire department
"is single and undivided, and although the city must perform this duty by means of agents or officers, it owes to them no special duty differing either in kind or degree from the duty which it owes to others in this respect. The duty is of a public character, and on grounds of public policy its neglect will not give a right of action *18 to any individual in the absence of a statute. If there are any reasons for a modification of this rule with respect to employees of such corporations engaged in hazardous service, they cannot be considered by the courts. The rule can only be modified by the legislature. In the absence of legislation the plaintiff is within the rule and plainly without a right of action."
See also Johnson v. Board of Education, 102 N.J.L. 606 (E. & A. 1926), the case of a janitor's wife who was acting as his substitute, and Kress v. Newark, supra, where the plaintiff was an employee in the municipal hospital. We are persuaded that the rule in question protects the school board in respect to claims asserted by an employee as fully as it protects against claims of third parties.
The statute, R.S. 18:5-30, exempts a school district from liability "for injury to the person from the use of any public grounds, buildings or structures." Thompson v. Board of Education, 20 N.J. Super. 419 (App. Div. 1952), affirmed 11 N.J. 207 (1953). It is not entirely clear what the Legislature meant by "injury from the use" of a public building. In the case cited, the plaintiff, an invitee, slipped on a cement floor that had been too highly waxed and polished. In Falcone v. Board of Education, 17 N.J. Misc. 75 (Com. Pl. 1939), a school girl was hurt by the falling of a slate partition in a washroom. In Kane v. Board, 20 N.J. Misc. 7 (Sup. Ct. 1941), the plaintiff stumbled and fell down stairs that the board had negligently failed to light. In Doerr v. Newark, 128 N.J.L. 491 (Sup. Ct. 1942), an invitee in the city hall was thrown, or fell, and was injured, and alleged that her downfall was due to the negligent manner in which the city hall was maintained. In each of these cases, the statute was held to afford immunity. In Terranella v. Union Bldg. etc. Co., 3 N.J. 443 (1950), a child was playing with other children in a city playground, rolling heavy concrete pipes that had been brought there for installation in a storm sewer. The child fell between two of the pipes and received fatal injuries. The court held the municipality not liable, on non-statutory grounds, but also suggested that immunity was granted by the statute. Compare *19 Kress v. Newark, 8 N.J. 562 (1952), where the negligence charged was the failure of the city to supply proper protective devices to an X-ray technician, and to warn her of the dangers incident to working around the machine. The statute is not mentioned, as both court and counsel seem to have assumed that it had no application.
The statute exempts the governmental body from liability for injuries received by an invited visitor at a gymnasium or theatrical performance in a school building, by a householder attending at the city hall to pay her water bill, by a school girl, and by a child playing in the playground. We may generalize and say that the statute negatives liability for personal injuries received by any one in a public building or on public grounds, providing the injury resulted from the "use." We see no reason for holding that the statute does not apply to injuries received by an employee. So to construe it would introduce an exception not warranted by the wording of the act or by the policy of the statute.
When does the injury result from the use of the building? Where the alleged cause of injury was negligence in waxing the floor or failure to light the stairway or keep the washroom partition in good repair, the statute was deemed a protection. Let us say that the injury springs from the use, if it is caused by any defect in the design, construction, or maintenance of the structure, but not if it arises from activities carried on there  the X-ray operations. This is a very tentative classification, but it suffices for the present case.
The alleged negligence of the board consisted in failing (1) to provide a sloping floor in the coal bin, so that the coal would flow of its own weight through the openings into the boiler room; (2) to provide a fan or other ventilating device that would draw the dust-laden air from the boiler room and out of the building, and (3) to treat the coal with oil  or by some other method  so as to prevent dust. It was also suggested that the board might have furnished plaintiff with a respirator, although plaintiff's expert testified that he *20 would not recommend it. Insofar as the injury to plaintiff's lungs may have been due to a faulty design of the coal bin, that is, a level instead of a sloping floor, it was an injury arising out of the use of the building, and the board is relieved of liability by the statute. But the failure to install and operate a ventilating fan or to treat the coal with oil is in a different classification. Injury thereby caused is not injury "from the use of any public grounds, buildings or structures" and is not within the scope of the statute.
The plaintiff perforce admits that the operation of the school where he was employed was a governmental function and not a proprietary one. In such case, the board is not liable to the employee for damage due to its negligent failure to act, for mere nonfeasance, but is responsible if the damage was the proximate result of a hazard arising from the negligent manner in which the board performed its duty; that is to say, the Board is answerable for misfeasance or active wrongdoing  to use the term that was adopted by our erstwhile court of last resort and is still employed. But the terms used to distinguish between liability and nonliability are not as enlightening as are the facts themselves on which our highest court has concluded that the governmental body was answerable in damages. In Allas v. Rumson the city built a "depressed ramp" without a guardrail around it, and failed to light it. The misfeasance in the Milstrey case was the repair of a sidewalk carelessly and with unsuitable material. In Kress v. Newark the active wrongdoing was the operation of an X-ray laboratory without warning the personnel of the dangers incident to exposure to the rays and without giving them periodic physical examinations. It is clear that the conduct of the defendant Board of Education of Red Bank, of which complaint is made in the present case, unless it rises to the standard of due care, falls within the category of misfeasance for which the board is answerable. Let us state it in somewhat different fashion: If the board, in the operation of its boiler room, created a dangerous condition by its failure to provide ventilating apparatus or to treat the coal so as to prevent dust, the *21 board was guilty of misfeasance, provided such failure constituted a lack of due care.
The defendant asked the court to charge that it "is not liable for mere negligence in the performance" of its duties; "nor is it liable for mere misfeasance. The defendant * * * can only be held liable if you find it guilty of active wrongdoing and positive misfeasance, and by active wrongdoing and positive misfeasance, I mean an affirmative act which is per se an obvious source of danger." The court refused so to charge and, in our opinion, properly refused, because such a charge would have been almost sure to mislead the jury. Other requests, employing the same terms, have the same defect. The critical words in the requests are highly technical. Their meaning, as applied to the facts of the case, can be learned only by study of our New Jersey decisions relative to the tort liability of governmental bodies. A glance into Words and Phrases indicates that the term "active wrongdoing" is used only in New Jersey. What layman would consider that repairing a sidewalk with black top was active wrongdoing? Or that operating an X-ray laboratory without giving to employees periodic physical examinations, should also be thus characterized? And yet our highest courts have held that these activities come within the legal meaning of the term.
The purpose of a charge is to aid the jury in reaching a right decision. To that end, the court should state the law applicable to the case in simple, clear and readily understood terms. Hoffman v. Trenton Times, 125 N.J.L. 450 (E. & A. 1940). The test of the sufficiency of instructions is, "how and in what sense, under the evidence before them, * * * would ordinary men and jurors understand the instructions as a whole"? Kargman v. Carlo, 85 N.J.L. 632 (E. & A. 1914). As Justice Bodine put it in Middleton v. Public Service Co. Transport, 131 N.J.L. 322 (E. & A. 1944), "The acid test is, would the jury be misled?" Though instructions accurately state the law in technical language, yet if they are so worded that they are apt to mislead the ordinary lay mind, not conversant with legal terms, they *22 are erroneous. Kauderer v. McAllister Coal Co., 132 N.J.L. 410 (E. & A. 1945).
It is not easy to define the tort liability of the defendant in words both accurate in a legal sense and clear and understandable to the layman. We suggest a charge that the defendant board of education in its management of the River Street School was in duty bound to be careful not to create a situation dangerous to others, which due regard for their safety would forbid. That duty was owed to the plaintiff, among others, and extended to the board's operation of the boiler room. It called for such a degree of care on the board's part as an ordinarily prudent man would use under like circumstances. If the evidence does not establish a failure to exercise such care, there should be a verdict for defendant; but if the defendant's neglect to use due care is proved, the verdict should go for plaintiff  subject to other factors such as proximate cause, etc. The phrase "to create a situation dangerous to others" is not too clear and probably should be explained further if used in charging the jury, or clarified by examples drawn, perhaps, from the cases cited above. The question might be put to the jury, whether the danger to the janitors ought reasonably to have been foreseen by the board. Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914); Green v. Mechanicville, 269 N.Y. 117 (Ct. App. 1935).
The board moved for judgment on the ground, among others, that the evidence did not prove it to be guilty of negligence. We incline to believe the motion should have been granted, but need reach no definite decision on the question. There was a dearth of proof that the disease which attacked plaintiff is at all common among janitors or others who tend furnaces. We doubt if facts were shown that should have led the board to foresee that their janitor would be apt to develop lung trouble unless they took steps to avert the danger. There was no evidence that the board failed to provide safety devices generally found in boiler rooms or to conform to standards established by general usage. See Canonico v. Celanese Corp., 11 N.J. Super. 445 *23 (App. Div. 1951). Cf. Coll v. Lehigh Valley R.R. Co., 3 N.J. Misc. 869, 873 (Sup. Ct. 1925), affirmed 102 N.J.L. 713 (E. & A. 1926); Restatement, Torts, § 289, comment (i); Wigmore, Evidence, § 461; Anno. 68 A.L.R. 1400.
Now let us turn to another problem. One of the grounds on which the defendant based its motion for judgment was that plaintiff's exclusive remedy was a proceeding under the Workmen's Compensation Act, R.S. 34:15-31, as amended by L. 1949, c. 29. The amendment broadens the definition of occupational diseases for which compensation is payable, so that it includes the disease from which the plaintiff is suffering. But did the amendment go into effect early enough to be applicable to the instant case? It became effective January 1, 1950, 4 months and 26 days before plaintiff had to quit work. He had, however, first noticed symptoms of the disease  of course he did not recognize them as such symptoms  two years earlier, but he was not much inconvenienced until after the statute went into effect.
The Supreme Judicial Court of Massachusetts, in a lead poisoning case, Johnson v. London Guar. etc. Co., 104 N.E. 735 (1914), held that compensation under the statute of that state was payable, although most of the period during which the employee absorbed the poison ran before the statute went into effect. The court decided that the right to compensation did not accrue until the workman became sick and unable to perform labor. This decision was cited and followed in Textileather Corp. v. Great American etc. Co., 108 N.J.L. 121 (E. & A. 1931), a controversy between liability insurance carriers. The court held that it was of no importance when the disease was contracted; that the right to compensation accrues only when the employee dies or is incapacitated for work, and that the company which carried the insurance at that time must bear the entire burden of compensation. To the same effect is Natural Products, etc., Co. v. Court of Com. Pleas, 123 N.J.L. 522 (Sup. Ct. 1940), affirmed 125 N.J.L. 309 (E. & A. 1940). The rule of these cases was slightly modified in Calabria v. Liberty etc Co., 4 N.J. 64 (1950), holding that the right to compensation *24 arises when "a definite fault akin to a traumatic injury occurs." In the case at bar, there was no incapacity for work and no "definite fault" prior to January 1, 1950, when the amendment of 1949 became effective. It would seem, therefore, that the amendment governs and that the plaintiff had a remedy under the workmen's compensation law. Generally where there is a remedy under the statute, it is exclusive, and the employee cannot maintain a common-law action for damages. R.S. 34:15-8. Stepnowski v. Specific Pharmaceuticals, 18 N.J. Super. 495 (App. Div. 1952). But the plaintiff employee urges that the defendant is estopped to allege that the plaintiff has surrendered his right to damages and to the recovery thereof by an action.
Before beginning his present action, the plaintiff instituted a proceeding under the Workmen's Compensation Law, but did not at first press for a judgment. Instead he started the action for damages which is now before us. The defendant board, by its answer in this action, asserted as a separate defense that the plaintiff's exclusive remedy was a proceeding under the Workmen's Compensation Law. Thereupon the plaintiff moved the compensation proceeding already initiated by him. His petition in the Workmen's Compensation Division, in the usual form of answers to printed questions, alleged that he sustained an injury by an accident on April 26, 1950. "What was the nature of the accident, and how did it happen? * * * While petitioner was working for respondent, he inhaled dust and sustained injuries to his chest and lungs." Although the word "accident" is used in the petition, the employee did not attempt to prove any accident in the usual sense but testified, as later he did again in the Law Division, to his work over the years, the dust, and the gradual deterioration of his health during the two years before he had to stop work. At the conclusion of the petitioner's proofs, the board moved to dismiss the petition on the ground that petitioner had not proved any injury by accident.
The deputy director thereupon dismissed on the double ground that no accident had been proved and that L. 1949, *25 c. 29, on which the employee relied, did not go into effect until eight months after the employee had to stop work, namely, January 1, 1951. The deputy was mistaken by one year,  a vital mistake.
It is entirely clear to us that no equitable estoppel bars the defendant from urging that plaintiff's exclusive remedy is a proceeding given by the Workmen's Compensation Law. If the board had taken the position in the Workmen's Compensation Division that the employee's proper remedy was an action for damages, and on that ground had obtained a dismissal of the petition, it would not now be heard to assert the contrary. But it did not take such a position; it merely urged that the employee suffered no accident. The board can, with entire consistence, defend in the present action on the ground that if plaintiff contracted an occupational disease in the course of his employment, his only remedy was in the Workmen's Compensation Division.
There remains the question of res judicata, or estoppel by record. While the Workmen's Compensation Division is part of the administrative branch of the government and not of the judicial, still a determination by the Division has most of the attributes of a final judgment and concludes the parties on all questions of law and fact comprehended by the determination. Hopler v. Hill, etc., Co., 5 N.J. 466 (1950). Including the questions of jurisdiction and the right to compensation. Drake v. C.V. Hill & Co., 117 N.J.L. 290 (E. & A. 1936). The Division determined (1) that the petitioner  the plaintiff in the present action  was not the victim of an accident in contradistinction to disease, and (2) that even if he was suffering from an occupational disease, the disease was not one which was compensable under the statute in effect when the cause of action arose, and therefore the petition for compensation was dismissed. This conclusion of the Division was based on an error of law, namely, the opinion that L. 1949, c. 29, was not effective until 1951; but that circumstance does not affect the conclusive character of the decision. Chirelstein v. Chirelstein, 12 N.J. Super. 468 (App. Div. 1951).
*26 The defendant argues that even though the judgment of the Division is res judicata, it cannot create a common-law right of action where the evidence, presented in the Law Division, discloses that such right of action does not exist; it cannot extend the jurisdiction of the Superior Court. In our opinion, however, no question of the jurisdiction of the Superior Court is presented. Where a plaintiff asserts a right of action for damages, the Superior Court has jurisdiction to determine whether or no the right exists, and to give judgment accordingly  even an erroneous judgment. The subject matter of the present action is clearly within the court's jurisdiction, without regard to any prior proceeding.
Nor is the right of action which is asserted by the plaintiff dependent for its existence on the judgment of the Workmen's Compensation Division, or on the doctrine of res judicata. The right of action is one given by the common law. The judgment of the Division merely precludes the defendant from asserting a defense to the action which the Workmen's Compensation Law generally affords where the parties to the action are employee and employer, and the basis of the action is an accident or industrial disease arising out of and in the course of the employment. We emphasize that that is a matter of defense. Dailey v. Mutual Chem. Co., 125 N.J.L. 465 (Sup. Ct. 1940), affirmed 126 N.J.L. 426 (E. & A. 1941). Where there is a right to compensation under the statute, the remedy given by the statute is exclusive, and the employee can pursue no other remedy. R.S. 34:15-8. But on the other hand, the compensation legislation does not bar a common-law suit for an injury that does not come within the coverage provisions of the act. Smith v. International, etc., Co., 98 N.J.L. 574 (E. & A. 1923); Downing v. Oxweld; etc., Co., 112 N.J.L. 25 (Sup. Ct. 1933), affirmed 113 N.J.L. 399 (E. & A. 1934); and see 2 Larson, Workmen's Compensation, § 65.10. If the judgment of the Division conclusively establishes that plaintiff's disease is not covered by the statute, then the employer *27 cannot allege in this action that plaintiff has a remedy under the statute.
A judgment for the defendant on the merits of course bars the plaintiff from maintaining a second suit on the same cause of action. Restatement, Judgments, § 48. But where the judgment was not rendered on the merits, it is conclusive only as to what was actually decided. So it is where the judgment was based on a lack of jurisdiction, or on the ground that the plaintiff sued on the wrong form of action. § 49, comment (a). And it is immaterial that the holding was erroneous. The ruling in the first action that plaintiff cannot recover in that form of proceeding is res judicata and binding in a second action in which the same question is raised. Restatement, Judgments, § 67. That is the situation here. The board is precluded from asserting that plaintiff's remedy must be found in the statutory proceeding.
Other reasons for reversal argued need not be discussed.
The judgment is reversed to the end that a new trial be had. Costs to await the outcome of the action.