44 N.J. Super. 114 (1957)
129 A.2d 738
HOSEA McBRIDE, PETITIONER-RESPONDENT,
v.
ROYAL LAUNDRY SERVICE, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Reargued February 11, 1957.
Decided March 4, 1957.
*115 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Seymour B. Jacobs argued the cause for petitioner-respondent (Mr. Fred Freeman, attorney).
Mr. Edward B. Meredith argued the cause for respondent-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The petitioner in this workmen's compensation case was denied relief in the Workmen's Compensation Division. The County Court reversed, holding that he had sustained a permanent disability, namely, an 80% binaural loss of hearing, resulting from exposure to *116 noise produced by washing machines in the employer's plant. The employer appeals. It is conceded by the employer that loss of hearing, resulting from noise in the employment, is an occupational disease within the purview of the amendments to N.J.S.A. 34:15-30 and 34:15-31, effective January 1, 1950. See Larson, Workmen's Compensation (Cum. Supp. 1956), § 41.40, n. 26.
On the first argument of this case we passed upon certain factual questions raised by the employer. There remains to be considered whether the award can be sustained under the amendments cited, notwithstanding proofs, including an audiogram taken in 1945, which indicate that petitioner had definitely suffered a substantial impairment of hearing by that time, some five years before the amendments took effect. In fact, the employer contends that petitioner then had at least a 40% to 50% loss of hearing. In dealing with this question petitioner rests his case entirely on the theory that his hearing became progressively worse from sometime prior to 1945 until 1953 and that the right to compensation under the occupational disease statutes does not accrue until the disability reaches its "peak" and becomes "static." Reliance is placed on the quoted words which appear in Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64, at pages 69, 70, 71 (1950). However, Mr. Justice Case who wrote the opinion for the court in that case, did not embody these concepts in the standard which he laid down there, namely, that a partial permanent disability occurs when "a definite fault akin to a traumatic injury occurs"  that is, when a definite impairment of bodily function or of a part of the body occurs. Further see Biglioli v. Durotest Corp., 44 N.J. Super. 93 (App. Div. 1957), filed herewith.
Petitioner's theory is indicated by the response his counsel gave to a question put on the oral argument. We asked counsel to suppose a case where a defect in hearing, attributable to an employment, originated after January 1, 1950, and in 1952 increased to a definite permanent disability amounting to a 50% loss of hearing and then progressively *117 over a course of eight years after 1952, increased still further until it reached a peak of 80%, becoming static at that point. Petitioner's counsel answered, contending that no right to compensation with respect to any part of the permanent disability of 80% arose until 1960. We cannot believe that under the statute the employee is required to withhold his claim for the permanent disability until 1960.
The proofs in the instant case demonstrate that a definite "fault" or loss of hearing may have occurred in 1945. Are the occupational disease amendments applicable to this loss of hearing? Mnich v. American Radiator Co., 263 App. Div. 573, 34 N.Y.S.2d 16 (App. Div. 1942), affirmed 289 N.Y. 681, 682, 45 N.E.2d 333 (Ct. App. 1942), is of some interest here, though we do not pass on the point there decided. The case held that a common-law cause of action for "injuries suffered" from silicosis up to the effective date of the Workmen's Compensation amendment (which first rendered silicosis claims compensable under the New York Compensation Law), was a vested right, which the Legislature did not intend to take away from the plaintiff when it adopted the amendment.
Petitioner relies upon Koval v. Natural Products Refining Co., 25 N.J. Misc. 489 (Sup. Ct. 1947), in which Mr. Justice Case held that a disability consisting of a nasal perforation due to chrome poisoning did not arise until January 8, 1946. The question there presented was whether the disability should be calculated upon the 1945 schedule of compensation or upon the 1946 schedule which was more favorable to the petitioner. In December 1945, while receiving treatment for a back injury, petitioner called the doctor's attention to an itch in his nose, and the doctor then informed him that "there was a hole in it." But it was not until January 8, 1946 that the employee quit working, because he could "not stand it any more."
It is to be observed in connection with that decision, first, that Mr. Justice Case, when thereafter he came to write the opinion in Calabria, laid down as a part of the test that the "fault" must be "definite." In Koval, as we *118 understand it, there was no proof of a definite disability until January 8, 1946.
It is also to be observed in connection with Koval that, in accordance with the settled policy of the law, we construe and apply the Workmen's Compensation statute liberally, resolving doubts in the employee's favor. Gargiulo v. Gargiulo, 13 N.J. 8, 13 (1953). In accordance with this principle, the courts and the Division in a matter of doubt will tend to hold that a bodily impairment did not become definite until after January 1, 1950. So in Estelle v. Board of Ed. of Borough of Red Bank, 26 N.J. Super. 9, 23, 24 (App. Div. 1953), modified 14 N.J. 256 (1954), the Appellate Division said, speaking of the employee's bodily impairment resulting from an occupational disease
"* * * he was not much inconvenienced until after the statute went into effect.
* * * In the case at bar, there was no incapacity for work and no `definite fault' prior to January 1, 1950, when the amendment of 1949 became effective."
And the Supreme Court said, 14 N.J., at page 259:
"* * * the plaintiff became incapacitated" after January 1, 1950 when the amendment took effect (italics added).
In Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 111 (App. Div. 1954), it could be said, too, that the "fault" did not become "definite" until after January 1, 1950, for the court seems to hold that not until then was
"his disability * * * sufficiently severe to bring about the filing of a formal claim. Cf. Estelle v. Board of Education of Borough of Red Bank, 14 N.J. 256, 258 (1954)."
Cf. Larson's interpretation of Calabria. Larson, supra, § 95.23. Further see Biglioli v. Durotest Corp., 44 N.J. Super. 93 (App. Div. 1957).
Russo v. Despatch Shops, Inc., 280 App. Div. 1008, 1030, 116 N.Y.S.2d 788 (App. Div. 1952), cited by the petitioner, *119 was a case of occupational deafness where the exposure to the noise seems to have ceased while one insurance carrier was on the risk, but the definite disablement seems not to have occurred until later when another carrier took over the risk. It was held that the latter carrier was liable.
When we put the present case down for reargument we left open the question whether an employer should be held under the occupational disease amendments for a disability of an employee occurring before January 1, 1950, where the employee did not know of its relation to his employment until thereafter. Further, see Biglioli v. Durotest Corp., supra. That theory has not, except in an incidental way, been urged by petitioner on the reargument, and we therefore should not pass on it. There is testimony by the petitioner and his sister that he was not aware of the connection between the deafness and the din of the employer's machines; but it hardly seems likely that he was unaware of this connection, and in fact the testimony was brought out by the employer through leading questions, undoubtedly in order to discredit him.
Petitioner here suffered a definite impairment in his hearing prior to January 1, 1950. We are satisfied that he is not entitled to recover therefor, but that he may recover for any definite increase in this disability occurring on or after that date, which is due, not to the natural progress of the preexisting impairment, but to the continued exposure to the noise. Larson, supra, § 95.23 and 95.26; Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64, 70 (1950). Proof as to such an increase can be secured from expert witnesses and other sources.
The proofs on this subject are not in such shape as to warrant a finding by us on the point, and the case will therefore have to be reversed, with directions for a new hearing before the Division to ascertain the amount of such an increase, if any. The Division will of course be bound by the finding of the County Court that petitioner at the time of the prior hearing was suffering from an 80% binaural deafness.
*120 An application may be made to the County Court for counsel fees for unusual services in this court (in connection with both the argument and reargument of the case), and also for such modification of the attorneys' allowances heretofore made for services in the Division and County Court, as that court deems advisable. R.R. 5:2-5(f). It should be borne in mind that neither the employee, nor the employer, has been entirely successful in the case.
We should also take note of the excessive allowances heretofore made by the County Court to petitioner's attorney, namely, $1,000 for his services in the Division and $1,000 for his services in that court. The award was $4,800 for the disability, $125 for medical expenses and $304 by way of reimbursement for the costs of a stenographic transcript. Without stopping to determine whether the $304 forms part of the "judgment" on which the attorney's maximum fee of 20% for services in the Division can be computed (N.J.S.A. 34:15-63; Bobertz v. Township of Hillside, 126 N.J.L. 416 (E. & A. 1941)), we think these allowances should not have been granted. In any event they will, of course, have to be reduced in view of our determination.
No costs on appeal.