INDIANA STEEL AND WIRE COMPANY ET AL. *v.* STUDES.

[No. 23,078. Filed March 19, 1918. Rehearing denied June 26, 1918.]

1. MASTER AND SERVANT. — *Injuries to Servant.* — *"Working Place."*—Under evidence that an employe was injured in trying to adjust a stick placed over a wire factory window to prevent moisture from coming in and interfering with the drawing of wire on rotating spools that he was operating a few feet away, which stick, not being fastened, was about to fall into one of the spools, the window and the stick were a part of the plaintiff's working place within the meaning of §3 of the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914, relative to risks of the employment due to defective working places, etc. p. 473.

2. MASTER AND SERVANT.—*Injuries to Servant.—Fellow Servant.* —Section 1 of the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914, abolishes the fellow-servant doctrine. pp. 473, 474.

3. MASTER AND SERVANT. — *Injuries to Servant.* — *Burden of Proof.*—Under §3 of the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914, a defendant employer has the burden of showing that he did not know, and by the exercise of ordinary care could not have known, of defects in an employe's working place in time to repair or to discontinue it before the injury. p. 474.

4. APPEAL.—*Presumptions.*—*Evidence.*—Under an assignment on the grounds of insufficiency of the evidence, the only duty of the court on appeal is to determine whether each element of the case is sustained by any evidence, as it must be presumed that the jury and the trial judge performed their duty in passing on the weight of the evidence. p. 476.

5. MASTER AND SERVANT.—*Injuries to Servant.*—*Negligence.*—In an employe's action for injuries, evidence tending to show that the defendant employer placed a stick above a window to keep out moisture, which interfered with the work, and that the plaintiff employe was injured while attempting to prevent the stick from falling into the machine which he was operating, is *held* sufficient to sustain a verdict finding the defendant negligent. p. 476.

6. RELEASE.—*Injuries to Servant.*—*Negligence.*—In a servant's action for injuries, evidence tending to show that a physician, employed by the defendant, misrepresented the time in which the plaintiff would recover, is *held* sufficient to sustain a verdict setting aside a release procured for an inadequate sum as fraudulent. p. 476.

7. TRIAL.—*Injuries to Servant.*—*Instructions.*—In a wire factory employe's action for injuries received while trying to adjust a stick placed over a window to prevent moisture from coming in and interfering with the drawing of wire on rotating spools that he was operating, which stick, being unfastened, was about to fall into the spools, an instruction attempting to apply the rule that if there is a safe and a dangerous way to do a thing, the deliberate choosing of the dangerous way constitutes negligence, was properly refused, where it was so misleading under the evidence as to permit an inference that the court was characterizing the plaintiff's attempt to replace the stick, without stopping the spools, as negligence. p. 477.

8. TRIAL. — *Instructions.* — *Requests Covered in Other Instructions.*—There was no error in refusing requested instructions that were given in substance in other instructions. p. 477.

From Delaware Circuit Court; *William H. Eichhorn,* Special Judge.

Action by Albert Studes against the Indiana Steel and Wire Company and the Fidelity and Casualty Company of New York. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Solon J. Carter, D. P. Williams, Harold Taylor, Jacob S. White* and *Burrell Wright,* for appellants.

*George W. Cromer* and *Harry Long,* for appellee.

TOWNSEND, J.—Appellee, as employe of appellant wire company, sustained a fracture of both bones of his right forearm while working in the wire company's factory. Appellant The Fidelity and Casualty Company of New York, as insurer of the wire company, settled with appellee for $120. This action is against both appellants for fraud in the settlement. The verdict of the jury was for $7,500, less the settlement, and judgment was rendered against appellants for $7,380. The questions presented by motion for a new trial are as follows: (1) Verdict is not sustained by sufficient evidence. (2) Verdict is contrary to law. (3) Errors in giving and refusing instructions. We shall consider the first two together.

So far as the negligence is concerned, the complaint is based on §3, Acts 1911 p. 145 (§8020a *et seq.* Burns 1914), and is the failure of the wire company to furnish appellee a safe place to work.

The evidence shows, following the allegations of the complaint, that the wire company employed from 150 to 200 men; that in its factory there was a bench along the south wall of the room about two and one-half or three feet high and about the same width; that on this bench were vertical iron spools about twelve inches in diameter at the top and about sixteen inches in diameter at the bottom; that in the top of each spool were four holes which were fitted with iron pins about two feet long with hooks on top to prevent wire from flying off; that these spools were about one foot apart and about twelve or thirteen inches from the south wall of the building; that they were rotated rapidly by electrical power transmitted by a line shaft and gears under the bench; that each spool could be stopped by a foot pedal which projected through a sheet metal apron which ex-

tended from the front edge of the bench to the floor; that from four to eight feet north of this bench on the floor were reels; that bundles of wire were thrown onto these reels and passed from them through dies on the bench and around the spools; that the dies were to reduce the size of the wire; that there were two reels on the floor for each spool; that the operator in passing from one spool to another stepped over these strands of wire running from the reels to the dies and the spools; that it was proper and necessary for the operator to wear gloves to prevent the burning of his hands in handling the wire while these spools and reels were running; that it was appellee's duty to draw wire from these reels through these dies onto six of these spools; that in the south wall back of the east two or three spools was an opening about four feet square, the bottom of which was about one foot above the bench; that steam from the exhaust of an engine came through this opening and rain and moisture came in there; that this moisture interfered with drawing the wire; that the wire company's carpenter was told to put a window in; that he put a window in this opening which pivoted in the center on each side like a transom; that this window pivoted in at the top and out at the bottom; that the window failed to fill the opening at the top and rain and moisture came in through this crack; that appellee called this to the attention of a carpenter in the shop and he promised to fix it; that thereafter appellee observed that it was fixed and thought no more about it; that this was thirty or forty days before this accident; that appellee on February 4, 1913, was operating these spools and, while untangling wire which was going onto the east spool, had his back to the window and, feeling cold air strike him, turned around and observing a stick about to fall from this crack, as he thought, into the revolving spools, seized in his right hand an iron bar

about three feet long and pushed the stick into place; that in so doing his glove and then his shirt sleeve caught in one of the spools and wound his arm around the spool and drew his body up over the bench; that both bones of his right forearm were broken and crushed just above the wrist.

Appellants insist that this window and this stick have nothing to do with appellees' working place. The function of a window when it is shut is to let in light 1. and keep out other things. When it is open, to let in light and air. The moisture interfered with the drawing of the wire and that is the reason the window was put in. The moisture came through the crack above the sash and that is the reason the stick was put in. Here was a window four feet square pivoted on the sides like a transom. If opened, it turned in at the top and out at the bottom. A stick four feet long was placed above, nailed neither to the sash nor to the frame. This stick was about three feet above the top of these rapidly rotating spools and about one foot south of them. If this stick fell either from the jar of the machinery or action of the wind, or from the opening of the window, either purposely or accidentally, the most obvious and probable place for it to go was into one or two of these rotating spools which were vertical and had four iron pins in the top. This was plainly a part of the working place and also a dangerous part.

It is next insisted that, the fact that the stick had been there thirty or forty days, the appellee did not know how it got there or who put it there, other 2. than that he had called the attention of a carpenter in the shop to the crack and this carpenter promised to fix it and appellee afterwards discovered that it was fixed and thought no more about it until he saw the stick about to fall the day of the accident, was not sufficient to shift the burden of proof.

There are a great many obscurities in the act of 1911, *supra,* and there is a great deal of loose and inapt language in this act; but there are at least two things in it about which reasonable minds could not well differ. One is that §1 abolishes the doctrine of fellow servant; and the other is that §3, among other things, shifts the burden of proof to the master to show that he did not know, and could not have known by the exercise of ordinary care, of the dangerous condition of the working place in time to have repaired or discontinued it. The jury had a right to infer from the evidence that the appellant wire company put the stick there and did not fasten it, or that it had an opportunity by ordinary care to know that it was there in time to have fastened it. If appellants did not want the jurors to draw this inference, they should have shown them something to repel it. §3, Acts 1911 p. 145, *supra.*

Appellants next insist that there is not sufficient evidence from which the inference of fraud may be drawn. The evidence shows that when appellee was hurt he was asked by the superintendent of the factory if he had a family doctor; that he said "no"; that the superintendent then told some one in the office to call a doctor, naming him; that this superintendent then took appellee in a cab to this doctor's office; that this doctor with the assistance of another took care of the fracture; that this doctor continued to care for it from February 4, 1913, to August 25, 1913; that about three or four weeks after the accident appellee told the doctor that the grocer was pressing him; that the doctor told appellee to go to the superintendent of the wire company and maybe something could be done; that appellee went and was told by the superintendent that the company had insurance and to go to the agent of the company; that appellee afterwards met the claim agent of the appellant insur-

ance company in the wire company's office, together with the superintendent; that appellee was asked how long it would be before he would be able to go to work; that appellee said he did not know; that the claim agent said he could not settle with him because when he settled it must be in full, and that they would wait a few days and by that time the doctor would know; that appellee then went to the doctor and told him the insurance company wanted to settle with him and asked how long it would be before he could go back to work; that the doctor gave him to understand that he would be able to go to work in six weeks; that appellee then told the doctor that his arm was hurting him and was sore yet; that the doctor finally said: "I will fix it at eight weeks and you needn't say anything to the wire company or insurance company, just keep that under your hat. When he (meaning the claim agent) comes to town, I will tell him myself"; that appellee again met the agent of the insurance company and the superintendent of the wire company in the wire company's office; that the agent said to appellee: "Albert, when I came to town I saw the doctor and had a talk with him and he said you would be able to go to work at drawing wire in eight weeks from the time you got hurt"; that the agent then asked appellee what his average weekly wage was; that the superintendent spoke up and said about $15 per week; that the agent then said: "Now you will be able to go to work in eight weeks from the time you were hurt and we will give you $15 per week for eight weeks"; that they settled for $120 and appellee signed a release which was witnessed by the superintendent and a girl in the office of the wire company; that appellee is an uneducated person of foreign birth; that the insurance company always called the doctor in question when the injured had no choice; that the insurance company paid this doctor in this instance in August, 1913;

that the insurance company had a contract with the doctor and paid him for the work by contract; that appellee had in August, 1913, a false joint in his right forearm at the point of fracture and a surgeon operated and put in a plate to hold the fragments of the ulna together. The doctor, the claim agent, and the superintendent of the wire company all deny making any representations to appellee as to the time required for him to get well. There was evidence tending to show that a doctor could not have given an opinion so soon as to when a comminuted fracture of this character would get well.

The jury had a right to believe that these representations were made to appellee and that he relied on them and was induced to settle because of them. The only thing we have to consider is whether there is sufficient evidence from which inference may be drawn to sustain each element in the case. This jury saw the witnesses, heard them testify, observed their candor or lack of candor, their intelligence or lack of intelligence and many other indicia which we cannot see. When the trial judge overruled the motion for a new trial, he said by the record that "the verdict was one which might reasonably have been reached." *Mt. Adams, etc., R. Co.* v. *Lowery* (1896), 74 Fed. 463, 477, 20 C. C. A. 596, 609. The trial judge saw these witnesses and had the same opportunities that the jury had. He also saw the jurors and knew something of their intelligence or lack of intelligence, their fairness or lack of fairness. When all this has happened, there is nothing for us to do but to determine whether each element of the case is sustained by any evidence. It must be presumed by us that the jury performed its duty and the trial judge performed his duty. This is the rule which governs us and it is reasonable to suppose that it will remain the rule until evidence is brought up by moving pictures and phono-

graph. *Christy* v. *Holmes* (1877), 57 Ind. 314; *Fort Wayne, etc., R. Co.* v. *Husselman* (1878), 65 Ind. 73, 76; *Deal* v. *State* (1895), 140 Ind. 354, 356, 39 N. E. 930. Both as to the negligence and as to the fraud the verdict is sustained by sufficient evidence and is not contrary to law.

Appellants complain of the court's refusal to give instructions Nos. 11, 18, 19 and 22 requested by them.

Appellants' instruction No. 11 was an attempt to apply the rule of law that where there are two ways of doing a thing—one safe and the other dangerous—he who deliberately chooses the dangerous way is guilty of negligence. But this instruction was so worded as to be misleading when applied to the evidence in this case. The jurors hearing this instruction might have inferred that the court was characterizing appellee's conduct, in attempting to put the stick back into place without stopping the spools, as negligence. The court did not err in refusing this instruction. Instructions Nos. 18, 19 and 22 were given in substance in other instructions and there was no error in refusing them.

Appellants insist that the court erred in instructions on fraud and cite to sustain this proposition *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280, 22 N. E. 139. This case and the authorities there cited sustain exactly and correctly the instructions which the court gave on this subject.

Judgment affirmed with costs.

NOTE.—Reported in 119 N. E. 2. Master and servant: liability of master for any negligence which involves one of his personal duties, 54 L. R. A. 33; master's knowledge of defect, 98 Am. St. 304; see under (1) 26, Cyc 1185. Release: avoidance of, on account of misstatements by physician as to nature of injury, 20 Ann. Cas. 750; Ann. Cas. 1918A 358.