JOHN S. GURZO, PLAINTIFF-APPELLANT, v. AMERICAN SMELTING AND REFINING COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLEE.

Submitted October 17, 1944—Decided January 19, 1945.

For the plaintiff-appellant, *David Roskein* (*Harry Cohn*, of counsel).

For the defendant-appellee, *Seaman & Seaman* (*Edwin Joseph O'Brien*, of counsel).

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of nonsuit entered in the New Jersey Supreme Court (Middlesex Circuit) in favor of the defendant and against the plaintiff. The suit was begun by plaintiff in October, 1942, against defendant, his employer, to recover damages for the pulmonary tuberculosis which he allegedly contracted as the result of defendant's negligence. Plaintiff, a man about twenty-seven years of age, entered the employ of the defendant in October, 1938, as a laborer and furnace attendant. His claim was that he was then in good health and able to do hard and laborious work, and that he had not previously suffered from any chest disease or tuberculosis and successfully passed a physical examination by the defendant's physician just prior to his being hired. Plaintiff continued to work at defendant's plant at Barber, New Jersey, steadily for about nine months or until June or July, 1939, when he was seized with a severe pain in the left side which was diagnosed as pleurisy. This required him to remain home for about a month, or until August, 1939, when he returned to work. In the meantime he had lost about twenty pounds in weight, ten of which he regained during the next few months.

After working from five to seven months, he developed a persistent cough and in January, 1941, he noticed the sputum was streaked with blood and the company physician after consultation sent him to the Perth Amboy Hospital for observation for three days where X-ray and sputum tests were positive for tuberculosis, and then for the first time plaintiff was informed by the company physician that he had tuberculosis. He did not thereafter return to work for defendant. After prolonged treatment at the Roosevelt Hospital, the Middlesex County Tubercular Institution, his health gradually improved until he was released in July, 1942. He worked for awhile as a taxi driver and as a guard in the State Hospital but claims he still suffers from shortness of breath and is unable to do any type of heavy work.

The details of the work that plaintiff did are unimportant, but his testimony was that the work required him to be in an atmosphere heavily laden with antimony fumes or dust eight hours a day, five days a week.

Inasmuch as the nonsuit was granted because plaintiff had not proved the case set up in his complaint, it is important to observe precisely what the complaint alleged both as to defendant's negligence and its effect on plaintiff's health.

After stating that defendant was engaged in the business of manufacturing, preparing, refining and mixing of substances and ingredients used in the manufacture of tiles, pottery, paint, &c., and that plaintiff was employed by defendant as a laborer in the department where a product known as "antimony oxide" was manufactured, prepared or refined, the complaint went on to say that in connection with the operation conducted at its factory defendant used certain sands, powders and other chemical substances which, when heated, gave off strong and noxious fumes, smokes and odors resulting in creating large quantities of fine dust, all of which permeated the air of the department where plaintiff was required to work and to which substances plaintiff was frequently and regularly exposed; that defendant knew or should have known that the operations which it maintained and conducted at its plant created certain hazards to the health and well-being of its employees, including plaintiff, who was not warned by defendant and had no knowledge of the dangerous and injurious nature of the noxious fumes and odors, &c.

Paragraph eight of the complaint alleges substantially that the defendant negligently failed to use proper means to eliminate the strong and noxious fumes, fine dusts, &c., from the air in and about its plant and to provide and maintain adequate ventilation, proper apparatus, appliances and devices to protect him; that defendant violated certain particularly designated Labor Laws of the State of New Jersey; and finally that defendant failed to provide a safe place in which plaintiff could perform his work while in the employ of the defendant.

Then follows paragraph nine, the pertinent part of which is important, and is as follows: "As a direct and proximate result of the aforesaid negligence and acts of the defendant, * * * the said noxious smokes, fumes and odors and fine dusts were introduced into the plaintiff's system and body at

the time and place aforesaid, as a result of which the plaintiff's health became debilitated and his physical resistance against infection was so reduced that he was thereby rendered susceptible to and did contract an active pulmonary disease, and he thereby became sick and disordered and suffered permanent pulmonary injuries * * *."

It is thus clear that the basis of the plaintiff's claim is that defendant's acts and omissions resulted in a lowered resistance of plaintiff by reason of which he contracted the disease of tuberculosis.

At the conclusion of plaintiff's case, defendant moved for a nonsuit on the ground, among others, that the sole pleading in the case alleges "that through the negligence of the defendant in this matter the plaintiff contracted the disease of tuberculosis. There is not the slightest pleading nor evidence in the pleading of any question of aggravation. The proof in this case is completely barren of any competent evidence to show that as a result of anything which the defendant did the plaintiff contracted tuberculosis."

Judge Oliphant granted the motion. In doing so he said: "Well I am convinced that this case cannot stand on the complaint in the case."

He then read that portion of paragraph nine of the complaint hereinbefore cited and said: "The testimony, as I remember it, is to the effect that this man had a focus of tubercular infection which was aggravated by the dust which lit up this infection which he already had. The complaint does not charge aggravation. It charges that this disease was contracted by reason of this condition. Now, there is no proof, as I remember it, to the effect that it was contracted by these conditions."

The judge then went on to say that under the decision of this court in the *Migliaccio* v. *Public Service Railway Co.* case (101 *N. J. L.* 496), he was of the opinion that under the complaint as drawn there was no sufficient cause of action supported by the proofs to allow the case to go to the jury. The other points in the motion to nonsuit he did not deem it necessary to pass on.

Plaintiff presents four points for reversal.

The first point is that the asserted variance, if any, was immaterial, technical and did not surprise or prejudice the defendant.

At the outset of his argument on this point plaintiff asserts that there was no variance between the pleadings and the proofs. With this we are not in accord. We think there was clearly a variance and that it was made apparent from the testimony of plaintiff's own medical witnesses, Dr. Grossman and Dr. Ormsby. The former testified that as a physician he knew that the cause of plaintiff's tuberculosis was the tubercular bacillus which he got from some source, which he was unable to state. Dr. Ormsby, who was plaintiff's specialist, testified that plaintiff had apparently no active tuberculosis prior to July, 1939, and that it started a short time prior to the development of pleurisy. In answer to the question, "How long antecedent to that had the tuberculosis infection been present, if you know?" he replied: "It is unknown. There is no proof that I can give. It usually occurs in childhood, but we don't know. We have no facts here."

There was no evidence that plaintiff's health was debilitated prior to what his doctors described as the onset of tuberculosis in July, 1939. Dr. Ormsby said: "I can't state prior to July, 1939, the effect of these dust inhalations on a tuberculosis process, but I know that they had a very bad effect after July, 1939, that is after the pleurisy because then the tuberculosis state existed in the lungs, and I can presume that the deep inhalations acted upon that same organ and accelerated the disease, but prior to it I can't state from my opinion just the effect that this would have in producing a tuberculosis state." While Dr. Ormsby said that he thought the plaintiff's employment was deleterious to his active tuberculosis after 1939, yet he qualified the statement by saying that any type of work would be deleterious to him in that condition and he shouldn't have done any work. The proofs, therefore, far from showing that plaintiff did contract an active pulmonary disease as a result of his employment, show nothing more than a possible aggravation of the tuberculosis as a result of continuing in the employment after July, 1939.

We think the trial court properly ruled that the plaintiff

did not prove that his employment was the cause of his tuberculosis and that his cause of action, if any, was according to the proofs, an aggravation of a tuberculosis which occurred after his employment from causes unknown.

Plaintiff's second point for reversal is that the real issues having been tried out the proper course of the court below should have been to allow the requested amendments.

Plaintiff cites *R. S.* 2:27–133 to the effect that a variance at the trial between a pleading and the proof thereunder, not misleading to the adverse party to his prejudice, may, by order, be cured by an immediate amendment of the pleading. As will appear hereafter, an immediate amendment was not sought by plaintiff.

Defendant claims in its brief that the variance was both misleading and prejudicial to it in that in the preparation of the legal and medical aspect of its defense it caused to be made an extensive investigation of a medical and scientific nature which showed beyond a doubt that no one ever did contract an active pulmonary disease in the manufacture of antimony oxide. Since the enactment of the Practice Act variance has been of less consequence than in the early times when it was of vital importance. "Nevertheless, to-day, it is sound law and sound reason that there must be no variance to the prejudice of the adverse party between the case declared upon and the case proven, and that a recovery must be *secundum allegata et probata.*" *Jordan* v. *Reed*, 77 *N. J. L.* 584; 71 *Atl. Rep.* 280.

It was clearly manifest that plaintiff was aware of the two separate and distinct causes of action; the one being a contraction of an active tuberculosis, and the other an aggravation of a pre-existing tuberculosis. Notwithstanding this knowledge, the plaintiff continuously maintained and still maintains that he does not base his action on the theory of aggravation, nor on the proofs establishing the contraction of tuberculosis, but only on the theory of debilitated health and lowered resistance.

As a matter of fact, no application to amend the complaint appears in the record, but defendant concedes one was made but not until after the motion for nonsuit was made, argued

and the court had announced that he was convinced the case could not stand on the complaint as drawn. Plaintiff's counsel says in his brief that at this point he "asked leave to amend the complaint so that the allegations thereof would conform with the testimony as the court below recalled the same." As stated before, the court's recollection of the testimony was that plaintiff had a focus of tuberculosis infection which was aggravated by the dust which lit up this infection which he already had; that is to say, the complaint did not charge aggravation but contraction and the proofs did not show contraction but tended to show aggravation. Indeed, it is clear from the appellant's third point that plaintiff was not asking the privilege to amend the complaint to meet the case that he considered he had proved because his third point is: "The medical testimony does not support the conclusion of the court below, that there was aggravation of a pre-existent tuberculosis," and yet plaintiff asked the court to amend the complaint to set forth a cause of action which he now claims the medical testimony does not support. It seems to us that to permit plaintiff to amend his complaint to state that antimony oxide aggravated a quiescent or dormant tubercular infection would be to allege a new and different cause of action and completely change defendant's prepared defense, and would preclude it from availing itself of the defense of the statute of limitations (*N. J. S. A.* 2:24–2) as plaintiff could then bring his suit as late as January, 1943, which would be within two years after the last date of his employment (January, 1941). Under the complaint as drawn and the proofs submitted, the suit would be barred by the statute in July, 1941. It was not brought until October 5th, 1942.

Furthermore, the application to amend came too late. Mr. Justice Case, writing the opinion for this court in *Meyers* v. *Otz et al.,* 123 *N. J. L.* 215, said: "The amendment for which plaintiff asked was not a formal one. The request did not come until nonsuit was moved and affirmative decision thereon was imminent. The theory of the action which the amendment would have set up was other than that of the original cause and called for substantially different proof." This is the situation here. When an attorney allows a ques-

tion which has been disputed throughout the presentation of his case to go to actual decision, it is then too late for the attorney to insist as a matter of right that he be permitted to amend his pleading. In such a case the application to amend is strictly discretionary.

Plaintiff's fourth point is that the evidence as a whole amply warranted the submission of the case to the consideration of the jury. In support of this point, plaintiff cites three cases: *Dailey* v. *Mutual Chemical Company of America,* 125 *N. J. L.* 465; *affirmed,* 126 *Id.* 426; *Downing* v. *Oxweld Acetylene Co.,* 112 *Id.* 25; *affirmed,* 113 *Id.* 399, and *Rosacci* v. *U. S. Pipe and Foundry Co.,* 123 *Id.* 357. We do not regard any of these cases in point. Each deals with a toxic substance which was proven to have directly affected plaintiff's health and did not involve the question of debilitated health and lowered resistance.

Plaintiff's attorney calls our attention to *Hahn* v. *Delaware, Lackawanna and Western Railroad Co.,* 92 *N. J. L.* 277; *affirmed,* 93 *Id.* 463, which holds that "the fact that the plaintiff had a predisposition to disease, or a latent weakness, cannot avail the defendant to relieve it from liability from the damages which ensued when its negligence brought the dormant disease into activity, or aggravated the latent weakness." We do not question this principle of law, but we do not regard it as applicable to the instant case under the pleadings and proofs.

We do not think that the plaintiff's case could be submitted to the jury on the question of the cause of his tuberculosis without medical testimony, and the medical testimony, as we interpret it, is against him so far as the complaint is framed.

We are of the opinion that at the close of the plaintiff's case the proofs did not meet the allegations contained in the complaint and that there was no abuse of discretion on the part of the trial court in refusing to grant the motion to amend the complaint at the time and under the circumstances existing when the said motion was made.

The judgment of nonsuit is, therefore. affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, JJ.   10.

*For reversal*—DONGES, PERSKIE, DILL, JJ.   3.