44 N.J. Super. 93 (1957)
129 A.2d 727
EDWARD BIGLIOLI, GENERAL ADMINISTRATOR OF THE ESTATE OF ETHEL BIGLIOLI, DECEASED, PLAINTIFF-APPELLANT,
v.
DUROTEST CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT. EDWARD BIGLIOLI, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ETHEL BIGLIOLI, DECEASED, PLAINTIFF-APPELLANT,
v.
DUROTEST CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1956.
Reargued February 4, 1957.
Decided March 4, 1957.
*95 Before Judges CLAPP, JAYNE and FRANCIS.
*96 Mr. Aaron Gordon argued the cause for plaintiff-appellant.
Mr. Robert Shaw argued the cause for defendant-respondent (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Summary judgment was entered against the plaintiff in these two actions, which had been brought in the County Court and then consolidated. The County Court held that the two-year statute of limitations barred recovery. N.J.S. 2A:14-2. Plaintiff appeals.
The first action was commenced February 26, 1952 by Ethel Biglioli for injuries allegedly resulting from the negligence of her former employer, the defendant, in exposing her to beryllium while she was in its employ. After her death on August 13, 1952, her general administrator was substituted as plaintiff in her stead. The second action was brought under the Death Act to recover damages for her death allegedly resulting from berylliosis.
For the purposes of the motion for summary judgment, the facts were orally stipulated by the attorneys. It appeared that defendant had been using beryllium in a manufacturing process for some considerable time prior to January 1, 1950, but never on or after that date, and had exposed Miss Biglioli to the beryllium up until a certain day in October 1949, but not subsequently. On that day she left work and never returned to it, except for two days in January and again on February 27, 1950, which was the last day of her employment.
Further, according to the stipulation 
Miss Biglioli "became ill in 1947 toward the latter part of the year. She was treated by doctors for stomach trouble, for what they diagnosed as colds, but nobody told her that she had beryllium and beryllium did not develop in her and she did not know she had it until after she had stopped working on February 27, 1950.

* * * * * * * *
And the beryllium poisoning of her lungs did not develop, was not manifest or diagnosed until 1951 in July when they had a test done at Trudeau Sanatarium in Saranac Lake. * * * Then *97 and only then in July of 1951 was there a manifestation that she had this condition. Then and only then can we assume  because if her doctors didn't know it, how could she have known it  did she know that she had any condition which could be attributed to her exposure in the plant." (Italics added)

I.

ASSUMING THAT MISS BIGLIOLI SUFFERED NO DEFINITE BODILY IMPAIRMENT AS A RESULT OF THE BERYLLIUM UNTL ON OR AFTER JANUARY 1, 1950, ARE THE PRESENT CAUSES OF ACTION BARRED RY AMENDMENTS TO THE WORKMEN'S COMPENSATION ACT EFFECTIVE THEN?
Amendments to the Workmen's Compensation Act, effective January 1, 1950, extended the coverage of the act to occupational diseases in general; theretofore the act did not provide any relief for berylliosis. N.J.S.A. 34:15-30, 34:15-31. Incidentally, it may be noted that it appeared on the argument before us that Miss Biglioli in her lifetime filed a workmen's compensation petition which has not been moved and is still pending in the Division.
Defendant's contention is that these amendments bar the present causes of action because the remedy they furnish an employee is exclusive. But the question is whether they do furnish a remedy in the present circumstances. For if they do not, we will presume that the Legislature intended to preserve the common-law remedy. Downing v. Oxweld Acetylene Co., 112 N.J.L. 25, 30 (Sup. Ct. 1933), affirmed 113 N.J.L. 399 (E. & A. 1934); Foley v. Western Alloyed Steel Casting Co., 219 Minn. 571, 18 N.W.2d 541, 542-543 (Sup. Ct. 1945). Plaintiff claims that the amendments do not apply to Miss Biglioli, for if they were applicable to her, they would be retroactive in operation.
It has been held in the case of an occupational disease, comparable to berylliosis for present purposes, that the liability for compensation attaches, when "a definite fault akin to a traumatic injury occurs." Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64, 71 (1950), an opinion *98 by Mr. Justice Case. Larson says that in such a case the right to compensation and the liability therefor arise at the date of disability. Larson, Workmen's Compensation § 95.21 (1952). See in accord McIntyre v. E.J. Lavino & Co., 344 Pa. 163, 25 A.2d 163, 165 (Sup. Ct. 1942); Henson v. Department of Labor and Industries, 15 Wash.2d 384, 130 P.2d 885, 888 (Sup. Ct. 1942); cf. Textileather Corp. v. Great American, etc., Co., 108 N.J.L. 121 (E. & A. 1931). Still other jurisdictions refer to the time of disablement. Blatchford v. Staddon and Founds (1927) A.C. 461, 468 (H.L.); Ferguson & Lange Foundries, Inc., v. Industrial Comm., 380 Ill. 185, 43 N.E.2d 684, 687 (Sup. Ct. 1942); Durham Mfg. Co. v. Hutchins, 115 Ind. App. 479, 58 N.E.2d 444, 446 (App. Ct. 1945); Mosier v. Marshall Furnace Co., 318 Mich. 113, 27 N.W.2d 514 (Sup. Ct. 1919); McCann v. Walsh Const. Co., 282 App. Div. 444, 123 N.Y.S.2d 509, 513 (App. Div. 1953), affirmed 306 N.Y. 904, 119 N.E.2d 596 (Ct. App. 1954). The terminology differs from that used by Mr. Justice Case in Calabria, but the concept seems to be about the same; the term "fault," as the Supreme Court employs the word, includes a definite impairment of bodily function or of a part of the body, which detracts from its efficiency in the ordinary pursuits of life. Heidel v. Wallace & Tiernan, 37 N.J. Super. 522 (Cty. Ct. 1955), and cases cited at page 528, affirmed 21 N.J. 335 (1956).
It may possibly be that in connection with an occupational disease, where an employee does not know of the "nature of his disability and of its relation to his employment" (cf. N.J.S.A. 34:15-33) until subsequent to the time of the "definite fault" or impairment, then the claim to compensation accrues, not at the time of the impairment, but at the time he first knows or ought to have known of its relation to the employment. See Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282, 1293 (1948); "Developments in the Law, Statute of Limitations," 63 Harv. L. Rev. 1177, 1203 (1950); cf. Panchak v. Simmons Co., 15 N.J. 13, 20-25 (1954). See Larson, supra, § 78.52, *99 cf. 78.42 (e); Annotation 11 A.L.R.2d 277, 301-311 (1950). Compare N.J.S.A. 34:15-51, dealt with in Schwarz v. Federal Shipbuilding and Dry Dock Co., 16 N.J. 243, 251 (1954). That question may be presented by Miss Biglioli's workmen's compensation petition, but we need not (in view of the conclusions reached under Points I and II herein), and therefore should not, decide it in this case. Suffice it now to hold that if a definite bodily impairment occurs after January 1, 1950 as a result of berylliosis, a right to compensation accrues under the statute at, or possibly subsequent to, the time of the impairment.
It is not entirely clear from the stipulation above mentioned whether Miss Biglioli had prior to January 1, 1950 suffered a "definite fault akin to a traumatic injury" which was attributable to the beryllium. For, as above stated, the parties stipulated that the "beryllium did not develop in her" until thereafter. In keeping with the policy of the law, which calls upon the courts to construe and apply the Workmen's Compensation Act liberally, the courts may in such a matter resolve doubts in the employee's favor. See McBride v. Royal Laundry Service, 44 N.J. Super. 114 (App. Div. 1957), filed herewith. However, in the instant case we shall assume in dealing with Point I of this opinion (as indicated by the above title to the point) that Miss Biglioli did not suffer a "definite fault" attributable to the beryllium until on or after January 1, 1950. In Point II we shall assume that she suffered such a fault prior thereto.
Plaintiff lays stress on the fact that, though Miss Biglioli may not have suffered this fault until on or after January 1, 1950, nevertheless the last time she was exposed to the beryllium was in October 1949, two months before the occupational disease amendments took effect. He contends therefore, as stated above, that if the statute is made applicable to her, it will be operative retroactively. This he claims is in violation of the Federal and State Constitutions, and in any event is contrary to the established rule that a statute will not be construed so as to make it operative retroactively unless there is language in it clearly requiring such *100 a construction. We think the answer to those contentions is this: Miss Biglioli (as we have assumed) did not suffer a definite bodily impairment as a result of the berylliosis until after the effective date of the statute, and since as indicated above, her right to compensation arose at (or possibly, as above stated, subsequent to) the time of this impairment, the statute is not being made to operate retroactively when it is applied in such circumstances. McIntyre v. E.J. Lavino & Co., 344 Pa. 163, 25 A.2d 163 (Sup. Ct. 1942), sustains the point and is practically on all fours with the present case. McIntyre, under one hypothesis, relied on the fact that there (as is the case here) the plaintiff continued in the defendant's employment until after the effective date of the pertinent amendments and that, by continuing therein, the employer and employee accepted the new legislation contractually. We need not pass on the question presented by a case where the employment has ceased prior to that date. In McCann v. Walsh Const. Co., 282 App. Div. 444, 123 N.Y.S.2d 509 (App. Div. 1953), affirmed 306 N.Y. 904, 119 N.E.2d 596 (Ct. App. 1954), the exposure and the employment had ceased years before the enactment of a certain amendment to the occupational disease statutes, but nevertheless it was held that since the disablement occurred after its enactment, compensation was recoverable under the amendment. The court pointed out that since the right to compensation accrued at the time of the disablement, the amendment was not being applied retroactively.
The cases in our state are not opposed to this. Cf. Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 111 (App. Div. 1954), where the exposure continued until after January 1, 1950, and apparently not until then was "his disability * * * sufficiently severe to bring about the filing of a formal claim"; Estelle v. Board of Ed. of Borough of Red Bank, 26 N.J. Super. 9, 23, 24 (App. Div. 1953), modified 14 N.J. 256, 259 (1954), where the Supreme Court said "the plaintiff became incapacitated" after January 1, 1950 (italics added); Stewart v. Wright *101 Aeronautical Corp., 136 N.J.L. 450, 452 (Sup. Ct. 1948). See also Johnson v. London Guarantee & Accident Co., 217 Mass. 388, 104 N.E. 735, 736 (Sup. Jud. Ct. 1914), where the exposure to the disease came before and after the enactment of the statute, but "the injury was received" thereafter. We have noted the word "were" appearing in N.J.S.A. 34:15-31, but put no stress on it.
We therefore conclude that if Miss Biglioli did suffer a definite physical impairment on or after January 1, 1950 as a result of the beryllium, the Compensation Act provides exclusive relief and bars the present causes of action.

II.

IF MISS BIGLIOLI SUFFERED A DEFINITE BODILY IMPAIRMENT AS A RESULT OF THE BERYLLIUM PRIOR TO JANUARY 1, 1950, ARE THE PRESENT CAUSES OF ACTION BARRED BY THE STATUTE OF LIMITATIONS, N.J.S.A. 2A:14-2?
The parties have stipulated that Miss Biglioli did not know, and (it is to be inferred) could not reasonably have known, of the nature of her disability and of its nexus to her employment until after February 27, 1950. Plaintiff strongly urges us to hold that in view of that, her cause of action at common law did not accrue (N.J.S.A. 2A:14-2) until she acquired or ought to have acquired such knowledge, and that it makes no difference that the exposure to the disease and the physical impairment occurred prior thereto.
To resolve this point we must return to first principles. A cause of action in negligence does not arise unless there has been, first, a negligent act or default and, second, an actual injury, however slight, proximately resulting therefrom. Tortorello v. Reinfeld, 6 N.J. 58, 65 (1950); Weinstein v. Blanchard, 109 N.J.L. 332, 336-338 (E. & A. 1932) and cases cited; Prosser, Torts (2d ed.), 57, 165; 63 Harv. L. Rev., supra, 1201.
One element, then, in a cause of action for negligence is the injury. The parties stipulated in this case that the *102 "beryllium did not develop in" Miss Biglioli until after February 27, 1950. As we have said, the significance of this statement is not clear. However, we do not in this case have to decide what constitutes an injury within the rule  that is, whether, to establish an injury, there must be proof of an impairment of bodily function, or whether it would suffice if there is proof merely of the inhalation of beryllium dust, causing some cellular process to take place in the body, which might or might not result in such an impairment at a later time. Cf. Hughes v. Eureka Flint, etc., Co., Inc., 20 N.J. Misc. 314, 315 (Cir. Ct. 1939, an illuminating opinion by Judge, now Justice, Oliphant); Watkins v. Myers, 12 N.J. 71, 75 (1953); but see Weinstein v. Blanchard, 109 N.J.L. 332, 338 (E. & A. 1932  stating that the mere presence of a foreign substance in the body constitutes an injury). For the very hypothesis on which this point rests is that Miss Biglioli suffered a definite bodily impairment as a result of the beryllium prior to January 1, 1950. Of course, if the common-law cause of action arose prior to that date, it is barred by the two-year statute of limitations.
The other element in a cause of action for negligence is the wrongful act or default. In the case of a continuing tort  and the negligent exposure of an employee to some occupational poison over a period of time is one form of a continuing tort  the act or acts, default or defaults, are said to be continuous or repeated. This raises difficulties under the statute of limitations, which are by no means resolved by a scholarly sophistication with respect to the distinction between: on the one hand, that sort of protracted wrongful conduct which is said to be single and indivisible, and as to which the period of the statute is projected (according to the authorities in some jurisdictions) from the time of the first initiation of the conduct, or (in other jurisdictions) from the time of the cessation of the conduct; and, on the other hand, that sort of protracted wrongful conduct which is said to consist of separate recurrent acts. Further see 63 Harv. L. Rev., supra, at 1205-1207; Prosser, supra, *103 63, 64. For cases, see e.g., Barberi v. Bochinsky, 43 N.J. Super. 186, 189 (App. Div. 1956); also Church of Holy Communion v. Paterson, etc., R. Co., 66 N.J.L. 218 (E. & A. 1901), upon which plaintiff relies.
The authorities in this country dealing with actions in negligence resulting in diseases, have proceeded on various theories of which two may be noticed. See Annotation, 11 A.L.R.2d 277 (1950). According to one theory (as above indicated), the wrongful conduct is deemed to be single and indivisible, and furthermore to be complete at the time of the first exposure  that is, in dust disease cases, at the time of the first inhalation of the dust. See, for a leading case, Schmidt v. Merchants Dispatch Transp. Co., 270 N.Y. 287, 200 N.E. 824, 827, 104 A.L.R. 450 (Ct. App. 1936). That theory was demolished by Mr. Justice (then Judge) Oliphant in Hughes v. Eureka Flint, etc., Co., 20 N.J. Misc. 314, 315 (Cir. Ct. 1939), supra, where he said in part:
"It cannot be that if two men begin working at the same time in a plant negligently operated and one contracts silicosis within two years thereafter, that he is privileged to bring his suit, but that the other who does not succumb to the dust within the two years from first inhalation is barred from bringing his action * * *."
According to another theory, the act or acts causing the inhalation of poisonous dust are looked upon as a single, indivisible continuing wrong, with the statute running from the time of the last exposure to the dust. See notably Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130, 133, 134 (Sup. Ct. 1936); cf. Maty v. Grasselli Chemical Co., 89 F.2d 456 (3 Cir. 1937), applying the New Jersey statute of limitations, reversed on other grounds, 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745 (1938); La Porte v. U.S. Radium Corp., 13 F. Supp. 263, 271 (D.C.N.J. 1935); but see Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282, 1293 (1949). In balancing, on the one hand, the hardships probably imposed upon the alleged wrongdoer (he may have to meet a claim involving alleged acts performed years before), against the injustice more certainly *104 imposed upon the person allegedly wronged, these authorities hold that the statute does not start running until the continuous wrongful conduct has come to an end.
The New Jersey cases are in accord with this second line of authorities. Hughes, supra; Tortorello v. Reinfeld, 6 N.J. 58, 66 (1950), referring to continuing negligent medical treatment; see Gurzo v. American Smelting & Refining Co., 132 N.J.L. 485, 491 (E. & A. 1945). In Hughes and Gurzo, it is said that the statute runs from the last date of employment. But as indicated in Hughes, this date seems to be of significance merely because that was the time when the exposure to silicosis dust ceased. Compare De Feo v. Peoples Gas Co. of N.J., 6 N.J. Misc. 790, 791 (Sup. Ct. 1928). In the last case the pollution of the well water caused by gas escaping from defendant's pipes and resulting in plaintiff's illness is treated as continuing, but plural and discrete acts, and recovery was had for the injuries within the period. Morey v. Essex County, 94 N.J.L. 427, 430 (E. & A. 1920), was cited. Further see Restatement, Torts §§ 161b, 899d, 930.
None of these cases aid the plaintiff's position. In fact, the authorities, which are controlling on this court (Casale v. Housing Authority of City of Newark, 42 N.J. Super. 52, 62, 63 (App. Div. 1956)), are directly opposed to his position. They hold, as stated in Tortorello v. Reinfeld, 6 N.J. 58, 65 (1950), that the statute of limitations runs in a personal injury case
"irrespective of the time when the injury is discovered or the consequential damages result. Fredericks v. [Town of] Dover, supra [125 N.J.L. 288 (E. & A. 1940)]; Sullivan v. Stout, 120 N.J.L. 304 (E. & A. 1938); Gogolin v. Williams, 91 N.J.L. 266, 267 (E. & A. 1917)."
In Weinstein v. Blanchard, 109 N.J.L. 332, 336, 337 (E. & A. 1932), the court held that the statute runs from the time when the duty is breached, and not from the time of the discovery of the damage. There the defendant, a surgeon, allegedly left in plaintiff's body during an operation a drainage tube which was not discovered by the plaintiff *105 until some 19 years later. In the face of these decisions, we cannot consider the rule of Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282, 1292 (1949), which is pressed upon us by the plaintiff. Further see 63 Harv. L. Rev., supra, 1203-1205, 1207.
Under the circumstances as stipulated and assumed in this point, the two-year statute of limitations bars Miss Biglioli's action for negligence. The cause of action accrues, as we have said, on the conjunction of two events, the wrongful act and the injury. Here the last wrongful act or acts occurred in October 1949 when she was last exposed to beryllium, and (under the assumption above made) the injury occurred prior to January 1, 1950.
Of course, if her own action was barred, no right of action with respect to the negligence vested on her death in her administrator ad prosequendum and the statutory beneficiaries under the Death Act (N.J.S. 2A:31-1; Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333 (E. & A. 1933)), regardless of the fact that in some respects the Death Act gives to them a new cause of action. Turon v. J. & L. Construction Co., 8 N.J. 543, 556 (1952); N.J.S. 2A:31-4.
We conclude then under Point I that if Miss Biglioli suffered a definite bodily impairment as a result of the beryllium on or after January 1, 1950, the present causes of action are barred by the Workmen's Compensation Act; and under Point II that if she suffered the same before then, they are barred by the statute of limitations.
Affirmed.
FRANCIS, J.A.D. (concurring).
In view of the beneficent social purpose of the occupational disease amendments to the Workmen's Compensation Act, it seems advisable to express a somewhat broader view of the claims which may be prosecuted thereunder.
The peculiar nature of occupational disease was recognized in the illuminating opinion of Justice Oliphant (then circuit *106 judge) in Hughes v. Eureka Flint, etc., Co., Inc., 20 N.J. Misc. 314 (Cir. Ct. 1939). There the complaint alleged a continuous exposure to silica in the employment from November 1920 to July 26, 1938. The suit was brought less than two years thereafter. In striking the defense of the statute of limitations, Justice Oliphant said:
"The existence of a disease such as complained of here is dependent on many factors; the length of exposure, the nature and intensity of the dust in the air, the resistance or susceptibility of the individual and many others. In some cases it may be contracted after short exposure, in other cases under identical conditions there may be no consequences whatever. It cannot be that if two men begin working at the same time in a plant negligently operated and one contracts silicosis within two years thereafter, that he is privileged to bring his suit, but that the other who does not succumb to the dust within the two years from first inhalation is barred from bringing his action except for any aggravation of a condition occurring within the first two years of employment. Yet this is the rule followed by some of the cases as typified by that of Schmidt v. Merchants Dispatch Transp. Co., 270 N.Y. 287; 200 N.E. 824, 104 A.L.R. 450, and apparently followed by Judge Barbour in Ziegler v. Henry Maurer & Son, 15 N.J. Misc. R. 654 and 659, 194 A. [612 and] 615. That theory is that the injury is complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust. In diseases such as silicosis, most often no effects of the inhalation of the dust are evident until after the two year period from the first inhalation. Of course, it may be said, and some cases are to this effect, that after damage or injury has occurred, the plaintiff may sue for any aggravation of his condition during the two years previous to suit. This to my mind is a statement of nullity, for proof of such is a practical impossibility in occupational disease cases.
Many opinions are in the books in support of the various theories, respecting the application of the statute of limitations in occupational disease cases. Many of them are set out in the opinions of Judge Hand in Pieczonka v. Pullman Co., 2 Cir., 89 Fed.2d 353, and that of Judge Manton in Michalek v. U.S. Gypsum Co., 2 Cir., 76 F.2d 115. The Supreme Court of Pennsylvania in Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130, has to my mind enunciated the true rule, i.e., that the statute begins to run from the last date of continuous employment. Certainly if possible, within the limits of the statute an interpretation of the phrase `cause of action' should be reached which is in favor of the injured party and against the wrongdoer. While the statute of limitations is one of repose and security, it was never intended to defeat a remedy before the right existed. Within statutory limits, for every wrong there is or should be a remedy.
*107 To hold that a plaintiff may prove acts of negligence extending over a period of perhaps many years is probably an undesirable result, perhaps contrary to one of the general purposes of the statute of limitations. It imposes hardships upon a defendant by compelling him to meet a claim involving his actions of many years before, but it would be even more undesirable and unjust to bar a plaintiff's remedy before his cause of action existed, which is certainly equally violative of the intent of the statute, definitely not violative of its language and infinitely more abhorrent to logic and justice." Id., 20 N.J., at page 315.
The philosophy of this opinion seems to have been accepted in Panchak v. Simmons Co., 15 N.J. 13, 20 (1954). The Supreme Court dealt with N.J.S.A. 34:15-17, which bars a claim for workmen's compensation unless the employer is given notice of the occurrence of the "injury" within 90 days. And it was held that the period began to run from the time when the compensable "injury" manifested itself or when the employee knew or should have known of the "injury."
And it may be inferred also that the soundness of Justice Oliphant's views on the subject were recognized by the Legislature when in 1948 the occupational disease sections of the Workmen's Compensation Act were amended. These liberal changes established the requirements: (1) for notice to the employer of the disease within five months after the date of last exposure to the employment hazard or within 90 days after the employee knew or ought to have known the "nature of his disability and its relation to his employment, whichever period is later in duration," N.J.S.A. 34:15-33, and (2) for the filing of petitions for compensation within two years after the last exposure or within one year after the employee "knew or ought to have known the nature of his disability and its relation to his employment, whichever period is later in duration," subject to a general limit of five years from the cessation of the employment exposure, N.J.S.A. 34:15-34.
The United States Supreme Court in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), adopted a rule which may be said fairly to be a composite *108 of the expression of the Hughes and Panchak cases. Justice Rutledge said:
"Urie filed suit on November 25, 1941. Under the terms of the then prevailing three-year statute of limitations, the court could not entertain the claim if Urie's `cause of action accrued' before November 25, 1938. Respondent contends that Urie, having been exposed to silica dust since approximately 1910, must unwittingly have contracted silicosis long before 1938, and hence that his `cause of action' must be deemed to have `accrued' longer than three years before the institution of this action. Alternatively it may be argued that each inhalation of silica dust was a separate tort giving rise to a fresh `cause of action,' and that Urie is therefore limited to a claim for inhalations between November 25, 1938, and the spring day in 1940 when he became incapacitated.
In our view, however, neither of the outlined constructions of the statute of limitations can be sustained. For, if we assume that Congress intended to include occupational diseases in the category of injuries compensable under the Federal Employers' Liability and Boiler Inspection Acts [45 U.S.C.A. §§ 51 et seq., 23 et seq.], such mechanical analysis of the `accrual' of petitioner's injury  whether breath by breath, or at one unrecorded moment in the progress of the disease  can only serve to thwart the congressional purpose.
If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.
Nor can we accept the theory that each intake of dusty breath is a fresh `cause of action.' In the present case, for example, application of such a rule would, arguably, limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen months of his employment. Moreover petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted.
We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion *109 of legal rights. The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date. `It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves. * * *' Associated Indem. Corp. v. Industrial Accident Commission, 124 Cal. App. 378, 381, 12 P.2d 1075." Id., 337 U.S., at page 168, 69 S.Ct., at page 1024, 93 L.Ed., at page 1292.
And see: Reid v. United States, 224 F.2d 102 (5 Cir. 1955); Bradt v. United States, 122 F. Supp. 190 (D.C.E.D.N.Y. 1954), affirmed on principal point, other point reversed 221 F.2d 325 (2 Cir. 1955); James v. Pennsylvania R. Co., 101 F. Supp. 241 (D.C.W.D. Pa. 1951), affirmed per curiam 196 F.2d 1021 (3 Cir. 1952).
As a consequence of these cases and the legislative policy implications of the sections of the Workmen's Compensation Act to which reference has been made, I believe our present rule for application to the case of a plaintiff who continued in the employment after January 1, 1950 may be said to be this: the common-law cause of action is barred if the occupational disease reached the stage of maturation where it became manifest and the employee knew or should have known of its relation to the employment prior to January 1, 1950, and no action was brought within two years after the date of acquisition of such actual or constructive knowledge. But where the employee continues in the employment after January 1, 1950, even though the disease became manifest prior thereto, if the knowledge of its relation to the employment did not accrue until subsequent to that date, the Workmen's Compensation Act applies. This result comes about because, as Judge Clapp's opinion indicates, continuance in the employment after January 1, 1950, makes the occupational disease sections of the act part of the contract of employment and so controlling. N.J.S.A. 34:15-30; Cropley v. Alaska Juneau Gold Mining Co., 131 F. Supp. *110 34, 35 (D.C.D. Alaska 1955). And under N.J.S.A. 34:15-34, an employee may file a petition for compensation within one year after he knew or ought to have known of the relation of his disease to the employment. See "Developments in the Law, Statute of Limitations," 63 Harv. L. Rev. 1177, 1200-1204 (1950); 2 Larson, Workmen's Compensation, § 78.52 (1952). As my colleagues said, we need not consider the problem raised by a case where the employment ceased prior to January 1, 1950. Cropley v. Alaska Juneau Gold Mining Co., supra.
Common-law actions for such diseases are rapidly approaching the vanishing point because of the remedy now provided by the Workmen's Compensation Act. But as the right of the first person to pursue the new remedy and the right of the last to pursue the old remedy are equal in the eyes of the law, it seemed just to add this concurrence. The view expressed does not call for an ultimate result on the appeal different from that reached by my colleagues. I agree that continuance in the employment after January 1, 1950 constituted an acceptance of the amended occupational disease sections of the act. And since, under the stipulation for purposes of the motion, plaintiff's berylliosis "did not develop in her" and "was not manifest" until after that date, her remedy is limited to workmen's compensation.