55 N.J. Super. 266 (1959)
150 A.2d 512
MELVIN S. EVANS AND JOHN R. NORWOOD, COMPLAINANTS,
v.
BURT J. ROSS, OWNER, TRADING AS HOLLY HOUSE, RESPONDENT.
Superior Court of New Jersey, Camden County Court, Law Division.
Decided April 21, 1959.
*267 Mr. Robert E. Gladden argued the cause for the defendant-appellant (Messrs. Ross, Flowers and Gladden, attorneys).
Mr. Thomas P. Cook argued the cause for the complainants-respondents (Mr. David D. Furman, Attorney General, attorney).
MARTINO, J.C.C.
This is an alleged discrimination case. It involves an experience of two representatives  the complainants here  of an all-Negro group organization functioning under the name of the Moorestown Civic Club who attempted to engage facilities of the appellant for the purpose of having a banquet for the members of that organization. The matter is here on appeal following a hearing before an Assistant Commissioner of Education who found the appellant guilty of acts of discrimination. N.J.S.A. 18:25-8(d); N.J.S.A. 18:25-21. On appeal the parties stipulated that the factual situation should be decided upon the transcript taken below. The appellant cannot seriously deny an act of discrimination as to this all-Negro group since the testimony indicates clearly his behavior, his conduct and his answers to their inquiries would logically lead to no other conclusion.
*268 The appellant raises three points in urging a reversal:
1. The appellant's facilities were private in nature and did not fit the statutory category "place of public accommodation."
2. The statute does not provide for the Department of Education, Division against Discrimination, to have jurisdiction over this type of alleged violation.
3. The facts do not establish that the appellant was guilty of an act of discrimination towards these complainants or the group they represented.
It may be expeditious to dispose of these reasons for reversal in the inverse order of their presentation. As indicated earlier, a resume of the testimony would indicate that the third ground for reversal is without any basis in fact. The testimony clearly indicates a negative desire on appellant's part to entertain the all-Negro group on his premises and that desire is manifested by a positive attitude against the availability of any part of his dinner facilities to this group for any date or occasion.
For the second reason advanced, namely jurisdictional right of the Department of Education, Division against Discrimination, to hear the complaint, the appellant urges that the Department of Education is given the right to hear these cases only because of the provisions of N.J.S.A. 18:25-6 which reads:
"There is created in the State Department of Education a division to be known as "The Division Against Discrimination" with power to prevent and eliminate discrimination in employment against persons because of race, creed, color, national origin or ancestry or because of their liability for service in the armed forces of the United States, by employers, labor organizations, employment agencies or other persons and to take other actions against discrimination because of race, creed, color, national origin or ancestry or because of their liability for service in the armed forces of the United States, as herein provided; and the division created hereunder is given general jurisdiction and authority for such purposes."
He argues that this section limits the scope of that Department's jurisdiction to three types of complaints based *269 upon discrimination: (1) discrimination in employment by employers, (2) discrimination in employment by Labor organizations, (3) discrimination in employment by employment agencies or other persons. The appellant loses sight of the fact that since 1945 there have been at least four amendments to the original statute adopted by the Legislature in that year. Before the year 1949 there had been some doubt as to the legality of cease and desist orders through the Division against Discrimination under the prior statute but the Legislature  as a result of a report made on April 22, 1948, by a committee appointed by former Governor Alfred E. Driscoll known as the Committee on Civil Liberties  amended the discrimination statute under Title 18 and the introducer's statement to that bill carried the following legend:
"This Bill is intended to combine in one law the substantive provisions of the existing civil rights law, Revised Statutes, Sections 10:1-2 to 10:1-7 and the existing law against discrimination Revised Statutes, Sections 18:25-1 to 18:25-28. It consolidates and unifies procedure and places administration under an existing single administrative agency."
The amendment of 1949 (L. 1949, c. 11, p. 37) provided that the Commissioner (Commissioner of Education) was to organize the Division (Division against Discrimination) into "two sections, one of which shall receive, investigate, and act upon complaints alleging * * * unlawful acts of discrimination against persons because of race, creed, color, national origin or ancestry." N.J.S.A. 18:25-8.
From N.J.S.A. 18:25-6, supra, the appellant charges that the latter portion of that statute states "* * * as herein provided; and the division created hereunder is given general jurisdiction and authority for such purposes" (emphasis added) means that the Legislature did not intend to incorporate those sections which follow and particularly N.J.S.A. 18:25-13 to 18:25-19, inclusive, under which this hearing was held. He urges that if that was the legislative *270 intent, the word would have been "hereinafter" and not "herein." Chief Justice Weintraub in New Capitol Bar & Grill Corporation v. Division of Employment Security, Department of Labor and Industry, 25 N.J. 155, 160 (1957), held:
"It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949)."
The jurisdiction of the Commissioner of Education would, therefore, seem to have support in the present law.
Although appellant has stressed three separate grounds to justify a reversal of the administrative ruling, it would appear that the principal ground urged is that the type of facilities he maintains is private rather than "a place of public accommodation."
In 1917 the Civil Rights Act was amended to include a comprehensive definition of a place of public accommodation, resort or amusement. L. 1917, c. 106, p. 220. In 1921 it was again amended to include additional places of public accommodation. Under N.J.S.A. 18:25-1, with which statute we are concerned in these proceedings, no definition was given as to a place of public accommodation when our Legislature first adopted the law. It seemed to be directed mainly to discrimination in employment. L. 1945, c. 169, p. 589. However, in 1949 the act was amended and supplemented with a definition of a place of public accommodation which has been retained in every amendment thereafter. See latest amendment, L. 1957, c. 66, p. 128, N.J.S.A. 18:25-5(j).
*271 The appellant contends that he maintains a public dining room to which room there was admittedly no discrimination shown. He argues that he also maintains various dining rooms not public in nature for which it is necessary to make a reservation, and after such reservation is made the general public does not have access thereto. He argues that these are private in nature and fit the exception of the definition which provides: "Nothing herein contained shall be construed to include or to apply to any * * * place of accommodation, which is in its nature distinctly private." (Emphasis added) N.J.S.A. 18:25-5(j).
The rooms which appellant designates as private in nature have in the past been assigned through prior reservations to parent-teacher association meetings, Boy Scout meetings, salesmen's meetings, post-funeral gatherings, dances, union meetings and fashion shows and even religious services by Jewish and Catholic organizations. It is not conceded nor meant to infer that any of these organizations consist of members who are totally of the colored race. The reservation for these rooms can include the service of food for consumption in the particular room engaged. The food is prepared and cooked in the same kitchen which serves the public dining room and served by personnel engaged by the appellant. While it is true that food in some instances is not served by the appellant and consumed by the persons engaging the particular room, nevertheless it is true that complainants in this instance, like many other organizations before them, sought the facilities for a banquet and were, at least impliedly, spurned.
The statutory definition of a place of public accommodation is most comprehensive, e.g., a place of accommodation shall include "* * * any restaurant, eating house, or place where food is sold for consumption on the premises * * * any auditorium, meeting place, or public hall * * *." Appellant's premises would certainly fit within either or both of these categories. The principal contention does not appear to be whether appellant's place of business is one of *272 public accommodation but whether it comes within the exception as a "place of accommodation, which is in its nature distinctly private."
Appellant concedes his place of business is available to all types of individuals, groups and organizations. Query: Is it appellant's reasoning that his facilities are available to all types of people or groups of people who make specific reservations for a specific room with or without food provided they are not of the colored race? This interpretation would render the law against discrimination in New Jersey futile and abortive. Adequate services must be available to all citizens regardless of race, color, creed or national origin. The refusal of such equality of opportunity to any individual citizen or group of citizens by reason of race, color, creed or national origin is discrimination. The New Jersey statute against discrimination is closely patterned after the New York law where its highest court through Judge Fuld aptly stated:
"One intent on violating the Law Against Discrimination cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discriminatory practices in ways that are devious, by method subtle and elusive  for we deal with an area in which `subleties of conduct * * * play no small part.' * * * All of which amply justifies the legislature's grant of broad power to the Commission to appraise, correlate and evaluate the facts uncovered." Holland v. Edwards, 307 N.Y. 38, 119 N.E.2d 581, 584, 44 A.L.R.2d 1130 (1954).
The decision of the Commission is affirmed.